PEOPLE *v.* AYRES.

1. RAPE—EVIDENCE—PHYSICAL AND MENTAL CONDITION — RESIST-
ANCE.

In a prosecution for rape, proof of the mental and physical
condition of the prosecuting witness at the time of the
commission of the alleged offense was competent as af-
fecting the question of the resistance she offered, or could
offer.

2. SAME—EVIDENCE—RELATED ACTS.

Testimony of respondent's attempt to have sexual inter-
course with prosecutrix on the preceding night, and the
resistance she then offered, was admissible for the pur-
pose of negativing her willingness to engage in sexual
relations with respondent, and also for the purpose of dis-
covering what took place at the time the claimed offense
was committed.

3. SAME—COMPLAINT—ADMISSIBILITY.

The fact that prosecutrix complained to her mother as
soon as she could, which was within 24 hours after the
commission of the alleged offense, was admissible, where
no details of the complaint were stated.

4. SAME—TRIAL—CRIMINAL LAW.

Where respondent claimed that the charge of the prose-
cutrix was wholly false, the seating of several ladies
immediately behind and close to the prosecutrix, during
the trial, no other seats being available, was not preju-
dicial, it being assumed that the rights of the accused to
a fair trial were jealously guarded against any unseemly
demonstration.

5. SAME—INSTRUCTIONS—QUESTION FOR JURY.

Where the substance of respondent's requests to charge
were given, except for a directed verdict, the ultimate
question as to respondent's guilt was for the jury.

6. CRIMINAL LAW—NEW TRIAL—TIME FOR MOTION—STATUTES.

Under Act No. 315, Pub. Acts 1909 (3 Comp. Laws 1915,
§ 12307), providing that the several circuit courts shall
on all lawful days and times be deemed to be in actual
session from the first day of one term until the next

succeeding term, notwithstanding the formal adjournment of a regular or special session, and section 11963, 3 Comp. Laws (3 Comp. Laws 1915, § 15836), providing that a motion for a new trial may be made in the same term in which the trial is had or at the next term thereafter, where respondent was convicted of rape at the February term and the next term began May 10th and ended Saturday, September 4th, a motion for a new trial filed Monday, September 6th, which would have been the first day of the September term but for the fact that it was Labor Day, was not filed in time to give the court jurisdiction.

Error to Mecosta; Barton, J. Submitted January 11, 1917. (Docket No. 155.) Decided March 29, 1917.

Otis Ayres was convicted of rape. Affirmed.

*John E. Dumon,* Prosecuting Attorney, for the people.

*Cogger & Cogger,* for respondent.

OSTRANDER, J. Respondent has been convicted of rape. The proceedings which resulted in his conviction are reviewed upon a record which contains the testimony given at the trial, the motion for a new trial, which was denied, and the exceptions taken and relied upon are discussed under the following headings:

"(1) The admissibility of evidence proving or tending to prove the commission of a former act or offense for the purpose of showing probable commission of the act charged.

"(2) Did the court err in overruling respondent's motion to strike out of the answer of the witness Hazel Martin the following language: 'I was so sleepy I could hardly undress.'

"(3) The right of the people to show that the complaining witness Hazel Martin complained to her mother as to the alleged offense on the day following the day alleged in the information.

"(4) Did the court err in permitting the sheriff to escort eight ladies into the courtroom and seat them immediately behind and within close proximity to the prosecutrix while she was giving her testimony, and while there was room for the ladies to be seated with the rest of the audience?

"(5) Admissibility of evidence on the part of the people as to the health of the prosecutrix prior to coming to Big Rapids.

"(6) Did the court err in permitting the witness Dr. Karschner to answer the following question: 'What would be the result of a tampon treatment upon the hymen?'

"(7) The admissibility of evidence as to the effect of the falling of the womb upon the general health and nervous condition of a girl 18 years and 8 months old.

"(8) Respondent's requests to charge.

"(9) The motion for a new trial made on the part of the respondent should have been granted by the court."

The prosecuting witness was more than 18, less than 19, years old. The court instructed the jury that the people must prove, not only the act of sexual intercourse, but beyond a reasonable doubt and to a moral certainty that there was "the utmost reluctance and resistance" on the part of the prosecutrix, that, if she consented to the act during any part of it, there was not the opposing will necessary to be established in order to convict, and that it was not claimed that respondent accomplished what he did by threat or physical violence, or that the prosecutrix was overcome by fear. Again the court said that to convict the jury must be satisfied beyond a reasonable doubt that the prosecutrix did everything she could do under the circumstances to prevent the respondent from accomplishing his purpose. "If she did not do that, it is not rape."

Testimony for the people tended to prove that the prosecutrix and the respondent occupied adjoining

rooms in the barracks, or headquarters, of the Salvation Army, to which organization both belonged, in Big Rapids, Mich.; the prosecutrix having gone there from Lansing on January 29, 1915. The respondent, his wife, and the prosecutrix lived at the barracks, or quarters; the prosecutrix doing housework and assisting in the meetings. Respondent's wife went away in the afternoon of February 3d, and during the night respondent went into the room occupied by the prosecutrix, who was awakened by his attempt to get into the bed with her. He did get into the bed, but the resistance and expostulations of the girl were such that he returned to his own room. During the next day the prosecutrix did her work, and during the day she sent a wire to respondent's wife asking her to come home. There was some conversation during the day between the prosecutrix and respondent, he praying with her or in her presence and asking for forgiveness for what he did the previous night. She was sick and disturbed, but did her work and went to the Bible study at 7 o'clock in the evening. While respondent was attending the meeting, she went upstairs and to bed, exhausted, and went to sleep. Some time during the night respondent again went to her room, got into the bed with her, and had intercourse with her, there being no one else in the house. She described in detail her efforts to protect herself. On the morning of February 5th she arose, got the breakfast, ate breakfast with respondent, wrote a letter and put it in the toe of a shoe belonging to respondent's wife, and another note which she left on her dresser, and by the 12:45 p. m. train of that day set out for her home in Lansing, Mich., taking her clothing. There she at once complained to her mother about what had occurred.

1. The evidence of her resistance, as it appears in the record, is not as convincing as could be wished,

when her experience of the previous night is considered and the fact that entrance to her room seems to have been unobstructed except by closed unfastened doors. It was competent to prove her mental and physical condition on the night of February 4th as affecting the question of the resistance she then offered, or could offer, and for this purpose to prove the state of her general health, that she was nervous and disturbed by a physical ailment, and that she was exhausted by loss of sleep and by the resistance she offered on the night of February 3d. The testimony concerning what occurred on the night of February 3d had, if believed, some probative value to negative desire or willingness on her part to engage in sexual relations with respondent. The events of the two nights and days were so related that they were properly laid before the jury for the purpose of determining the relations of the parties and discovering what took place during the night of February 4th. This disposes of respondent's first, second, fifth, sixth, and seventh contentions.

2. Prosecutrix complained of the affair to her mother as soon as she could, which was within 24 hours after the committing of the alleged assault. No reason is suggested for ruling that the fact that she then complained, details of the complaint not being stated, could not be proven.

3. In determining the motion for a new trial, the court stated, in this respect contradicting the affidavit of counsel, that "the rest of the courtroom being entirely occupied by spectators, and that being the only possible place in which they could sit," the seating of the party of ladies where they were seated by the sheriff and the presence of the ladies in the courtroom was not prejudicial to respondent, and not good ground for a new trial.

We accept the statement of the trial judge that other

available space for spectators was occupied when the ladies entered and were seated, although when counsel made his objection to the proceeding he stated, and his statement was not then challenged, that there was then ample room to accommodate the ladies with chairs upon the floor of the courtroom. Respondent's counsel appears to complain, not of the presence of the ladies in the courtroom, but rather of what he regarded as an ostentatious, calculated entry and seating of the visitors. It is assumed that in trial courts the right of the accused to a fair trial is jealously guarded, and that an unseemly demonstration, favorable or unfavorable to the accused, or to a prosecuting witness, will not be tolerated. It is not unseemly that women shall take an interest in a trial like the one reviewed here, not from curiosity, but because of the peculiar nature of the issue and the trying position of the prosecutrix in the presence in which she finds herself. In this case the accused denied having entered the room of the prosecutrix on either of the occasions described by her. According to him and his testimony, her story of what occurred in her room on both occasions was wholly false. The issue being as indicated, it is not perceived how the entry and presence of these ladies as described could have affected the determination of the issue presented.

4. The court properly submitted the question of respondent's guilt to the jury; none of the respondent's requests except for a directed verdict being wholly refused. In different language, but in substance and effect, the essentials of instructions asked for were stated in the charge given. It cannot be seriously contended that the ultimate question was not one to be answered by a jury.

5. This cause was tried at the February, 1915, term of the circuit court, the term ending May 8, 1915. The next term of court began May 10, 1915, and ended

September 4, 1915, which was Saturday. The motion for a new trial was filed September 6, 1915, which was Labor Day. The first day of the new September, 1915, term was Monday, September 6th; in fact, it was Tuesday, September 7th. Act No. 315, Pub. Acts 1909 (3 Comp. Laws 1915, § 12307), provides that the several circuit courts shall on all lawful days and times be deemed to be in actual session from the first day of one term until the next succeeding term, notwithstanding the formal adjournment of a regular or special term. It is objected that the motion was made too late, and upon authority of *Nichols* v. *Circuit Judge*, 185 Mich. 654 (152 N. W. 482), the objection is sustained, as it was in the court below. But, that respondent may not believe that a meritorious position is denied him upon a mere construction of an act of the legislature, we have, as the circuit court did, reviewed the showing for a new trial which was presented, and agree that it was properly denied.

No reversible error is made to appear, and the judgment is affirmed.

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred. FELLOWS, J., did not sit.