PEOPLE *v.* GEANAKOPOULOS.

1. RAPE—EVIDENCE—SUBSEQUENT ACTS—INSTRUCTIONS—CREDIBILITY
—REQUEST TO CHARGE.

   In prosecution for statutory rape where act of intercourse upon
   which charge was based occurred over two weeks before the
   girl's sixteenth birthday and on cross-examination by defend-
   ant's own counsel he elicited testimony that she had had
   intercourse with defendant a week after her birthday, neither
   the admission of such testimony under such circumstances
   nor a charge that such testimony was usable in determining
   credibility of defendant and the complaining witness was
   error, especially in the absence of any request to charge that
   such testimony could not be used for any purpose (Act No.
   328, § 520, Pub. Acts 1931).

2. SAME—CROSS-EXAMINATION OF COMPLAINING WITNESS.        ·

   In prosecution for statutory rape, alleged to have taken place
   in defendant's home in which the complaining witness lived
   while working on midnight shift at defendant's restaurant, it
   was not prejudicial error for trial court to confine cross-
   examination of girl on matter of her entertainment of soldiers
   and sailors in her room to period prior to alleged act of inter-
   course, where a showing that there were immoral relations be-
   tween the girl and her callers was neither proposed nor at-
   tempted (Act No. 328, § 520, Pub. Acts 1931).

3. SAME—OTHER OFFENSES—EVIDENCE—CREDIBILITY.

   In prosecution for statutory rape, testimony of defendant as to
   whether or not he was responsible for a child being born to a
   woman in his employ at one time was admissible as affect-
   ing his credibility although inadmissible to show he had been
   guilty of similar offenses (Act No. 328, § 520, Pub. Acts
   1931).

4. SAME—DETENTION OF GIRL BY JUVENILE AUTHORITIES—ARREST.

   In prosecution for statutory rape of girl who had worked for
   defendant in his restaurant and lived at his home and who

had been detained by juvenile authorities incident to unlawful taking of fur coat belonging to defendant's daughter, no prejudice resulted from court's statement in presence of jury that since the girl was a juvenile she was detained and not arrested although the police might have taken some part in it and there is no showing made that the charge against her had yet been dismissed (Act No. 328, § 520, Pub. Acts 1931).

5. SAME—COLLATERAL MATTERS—EVIDENCE.

Contention that prejudicial error to defendant in prosecution for statutory rape resulted from permitting officers, having custody of complaining witness, to testify that proceedings against her for the unlawful taking of a fur coat belonging to defendant's daughter had been dismissed, *held*, without merit, where record does not disclose that either the officers or anyone else had so testified and no objection had been made to the testimony of the officers (Act No. 328, § 520, Pub. Acts 1931).

6. SAME—INSTRUCTIONS—INCLUDED OFFENSES.

Court's reference to murder and its included offenses while giving charge to jury as to offenses included in crime of statutory rape *held*, not to have resulted in prejudicial error (Act No. 328, § 520, Pub. Acts 1931).

7. SAME—EVIDENCE.

Evidence in prosecution for statutory rape *held*, ample to sustain jury's finding that defendant's guilt had been established beyond a reasonable doubt (Act No. 328, § 520, Pub. Acts 1931).

8. SAME—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—PROBABILITY OF DIFFERENT RESULT.

Denial of new trial on ground of newly-discovered evidence as to age of complaining witness in prosecution for statutory rape was proper, where evidence presented on such motion was not such as to make it at all probable that a different result would be obtained if a new trial were granted (Act No. 328, § 520, Pub. Acts 1931).

Appeal from St. Clair; Stewart (Shirley), J. Submitted January 15, 1948. (Docket No. 84, Calendar No. 43,388.) Decided April 5, 1948. Rehearing denied May 18, 1948.

George Geanakopoulos was convicted of statutory rape. Affirmed.

*Arthur J. Mann, Louis J. Colombo* and *Anthony A. Vermeulen,* for defendant.

*Eugene F. Black,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Reg. S. Atkins,* Prosecuting Attorney, and *Eugene O'Brien* and *Delmar L. Cleland,* Assistant Prosecuting Attorneys, for the people.

NORTH, J. George Geanakopoulos, having been convicted on trial by jury of statutory rape* and sentenced, has appealed. The offense is charged to have been committed March 3, 1943, on one Katherine Bokach, who became 16 years of age March 20, 1943. Through Mrs. Geanakopoulos, Katherine, about the middle of February, 1943, was employed to work in a Port Huron restaurant which was owned and operated by George Geanakopoulos. Incident to her employment it was arranged that Katherine should have an upstairs room at the Geanakopoulos home in Port Huron. Her hours of employment were from midnight to 8 a. m.

According to Katherine's testimony, as she came down the stairs in the Geanakopoulos household shortly before midnight, March 3, 1943, on her way to her work, the defendant who was in the hallway, took hold of Katherine's arm and "pulled" her to the adjoining sitting room; that he kissed her several times, and then took her by the arm into his bedroom which was "next to this sitting room," and there had sexual intercourse with her.

In his testimony the defendant denied having had sexual intercourse with Katherine or that he was present in the Geanakopoulos home at the time of the alleged offense. He sought to prove a defense

---

* See Act No. 328, § 520, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-520, Stat. Ann. § 28.788).—REPORTER.

in the nature of an alibi by witnesses who testified
that at the time of the alleged offense he was at his
restaurant.   He also presented character witnesses
who testified in his behalf.

Without the matter having been previously in any
way referred to at the trial, the attorney who then
represented defendant, on cross-examination of
Katherine had her testify in response to his ques-
tions that on a later date (March 27, 1943) than the
offense charged and shortly after Katherine became
16 years of age, she had sexual intercourse with de-
fendant in her upstairs room at the Geanakopoulos
home.   The attorneys representing defendant on this
appeal now assert that the admission of the testi-
mony as to subsequent sexual relations constituted
error, and, also, that the trial judge was in error in
charging the jury that the only use the jury could
make of the testimony relating to subsequent rela-
tions would be in passing upon "the credibility of
either of the two witnesses," meaning Katherine and
defendant.   There is no merit to either of these al-
leged grounds of error.   The record clearly discloses
that attorney Mann, defendant's trial counsel, even
after the court had called to his attention that the
testimony of subsequent acts was at least of doubt-
ful admissibility, insisted it was admissible as bear-
ing upon credibility.   In defendant's brief his coun-
sel now say:

"The testimony of the incidents of March 27, 1943,
was not admissible for any purpose, and the trial
court should have charged the jury not to consider
it for any purpose whatsoever."

The position now taken by defendant's counsel is
directly contrary to that taken by defendant's attor-
ney at the trial; and further defendant did not re-
quest the court to charge the jury that the testimony

should not be considered for any purpose. See *People* v. *Barringer*, 311 Mich. 345; 3 Comp. Laws 1929, § 17322 (Stat. Ann. § 28.1052). As indicated, the testimony of which defendant now complains was brought into the case in his behalf by his own attorney. Hence it might well be said in the instant case, as in *People* v. *Prevost*, 219 Mich. 233, 245: "If any ill effects resulted from it in the minds of the jurors the defendant has the satisfaction of knowing that no one was to blame for the outbreak but himself." * Earlier in the Court's opinion in the *Prevost Case*, concerning an alleged prejudicial answer made by a witness on cross-examination by the prosecutor, it is said:

"This was not responsive to the prosecutor's question, but defendant's counsel made no objection to the answer nor did they move to strike it out. Failing to do this they cannot now complain."

Another alleged error is presented by the following question in defendant's brief:

"Did the trial court err in refusing to permit defendant to cross-examine prosecutrix as to having boy friends in her room *after* March 3, 1943?"

In the above respect the contents of the record is indicated by the following questions asked on cross-examination of Katherine:

"*Q.* Did you ever have soldier friends come over to see you? * * *

"*Q.* And during the time you were there (at the Geanakopoulos home), were there soldiers and sailors that came to see you? * * *

"*Q.* Were soldiers and sailors in your room upstairs?"

Objection to each of the above questions was sustained; but the court ruled that the inquiry would be

---

* See, also, *People* v. *Zesk*, 309 Mich. 129.

proper if "confined to prior to the date of this" alleged offense.    Thereupon the cross-examination continued as follows:

"*Q.*    Now, between that date that you went there (to the Geanakopoulos home) and the 3d of March did you have soldiers and sailors in your room upstairs?

"*A.*    No, I didn't.    *    *    *

"*Q.*    You swear there weren't soldiers and sailors in your room between the time you went there and March 3, 1943?

"*A.*    No, there wasn't any there."

The court's ruling did not constitute prejudicial error.    The fact that Katherine may have had boy friends as callers would not have a material bearing upon her credibility.    Defendant's counsel at no time advised the court he proposed to prove that there were immoral relations between Katherine and her callers, nor is such a claim asserted in this Court.

Defendant further contends the trial court erred in permitting, over objection, on defendant's cross-examination, the following:

"*Q.*    Were you responsible, George, for a child being born to a woman in your employ at one time?

"*A.*    No, sir, the first time I ever hear in my life anything like that.

"*Q.*    Your answer then to that question is 'no'?

"*A.*    No."

Defendant on direct examination had testified that he previously had pleaded guilty to a charge of adultery and in that answer he stated: "That is the only time I have ever been involved with the law." Regardless of whether there was any connection between his direct testimony and the above cross-examination, the latter did not constitute error.    In *People* v. *La Londe,* 197 Mich. 76, a headnote reads:

"In a criminal prosecution for (statutory) rape, a question asked defendant on cross-examination as to whether he had been responsible for the birth of a child by a woman employed in his office a number of years prior to the offense charged, while inadmissible to show that defendant had been guilty of similar offenses, was admissible as affecting his credibility."

Incident to another phase of this appeal, defendant presents the following questions:

"Did the trial court err in stating to the jury that prosecutrix was not arrested, that she was in custody of the probate court, when, as a matter of fact, she was in the custody of the Port Huron police?

"Was it error to permit the arresting officers of Katherine Bokach to testify to a collateral issue that the proceedings for the unlawful taking of the fur coat of defendant's daughter were dismissed?"

Presentation of the pertinent factual background necessitates recital of the following. Defendant's daughter Lillian, who was living in her parent's home, went on a visit to Detroit. In Lillian's absence Katherine and a girl friend, who at times stayed in Katherine's room, took possession of a fur coat and a fur jacket which belonged to Lillian. The two girls wore the garments to a dance but thereafter both the coat and the jacket were returned to the Geanakopoulos home. For some reason not appearing in the record, Katherine's girl friend destroyed the jacket by burning it in the furnace of the Geanakopoulos home. Lillian made complaint to the Port Huron police and as a result the two girls were taken into custody. Katherine was taken by police officers to the juvenile quarters, where she was questioned by the police matron and other officers. It was while being so questioned on

April 23d that Katherine first revealed the circumstances out of which the present prosecution arose. Evidently defendant's counsel relied upon the testimony disclosing in detail the foregoing as being the motive which led Katherine to unjustly charge, as defendant asserts, that he committed the offense for which he was prosecuted. Some controversy arose between counsel as to whether incident to Katherine's having been taken into custody by the police it was proper to term it an "arrest," she being a juvenile. All the details of what occurred incident to the taking of the coat and jacket and Katherine's subsequent detention were covered by the testimony. It finally culminated in the following:

"*The Court:* Well, I doubt very much if a juvenile is arrested, Mr. Mann, when they are detained by the probate court, I think that is the purpose of the law.

"*Mr. Mann:* I will eliminate the word 'arrested.' "

We are unable to find that any prejudice to defendant resulted from the trial court having stated in the presence of the jury, "I don't think you do arrest a child. In all probability she was detained by the juvenile authorities. The police might take some part in it."

The record does not disclose that either of the police officers testified "that the proceedings for the unlawful taking of the fur coat of defendant's daughter were dismissed," or that either officer testified to that effect. Had such testimony been given, it would not have constituted prejudicial error. Further, so far as disclosed by the record, no objection was made to any of the testimony of either officer.

Defendant complains of the charge to the jury in this respect. The circuit judge in an effort to make clear to the jury a statement that the main offense

of statutory rape included the lesser offenses of assault with intent to commit rape and, also, assault and battery, charged the jury as follows:

"This jury is, of course, not familiar with questions of rape. You probably are more or less familiar with—somewhat familiar perhaps with, we'll say, the charge of murder. Now, to explain what I mean, or to give you some clarity in the instructions I am to give you, in a charge of murder ordinarily that includes murder in the first degree, murder in the second degree and the charge of manslaughter, the two other charges being less than murder, and it is the duty of the court to instruct the jury on all three of those charges. So, the charge of rape includes two lesser charges known as assualt with intent to commit the crime of rape, and the offense known as assault and battery. That one, I suppose, you have heard about, assault and battery.   *   *   *

"Now, let's have it clear; you can find him guilty, if he committed that act of March 3, 1943.   *   *   *

"If you believe beyond a reasonable doubt that what the young woman said on March 3, 1943 happened, whether she consented or whether she didn't consent makes no difference, your verdict should be guilty."

We are not impressed with defendant's contention that:

"This instruction had no bearing whatever upon any issue in this case. It could only tend to confuse the jury. It was extremely prejudicial, for it squarely brought before the jury a vicious crime which should never have been called to the jury's attention, and had no proper place in this case."

The court's reference above to a charge of murder, et cetera, was to a phase of the law that is quite commonly known to persons who serve as jurors. It was not prejudicial under the record in this case,

which we think is materially different from the circumstances disclosed in the case of *People* v. *Cismadija,* 167 Mich. 210, upon which defendant relies.

Nor do we find merit in defendant's contention that the verdict was "contrary to the overwhelming weight of the competent evidence." Instead, our review of the record brings the conviction that the testimony was ample, as the jury found, to establish defendant's guilt beyond a reasonable doubt.

Defendant's remaining contention meriting comment is that the trial court erred in denying defendant's motion for a new trial based upon after-discovered evidence. Defendant stresses that the only testimony at the trial of the case as to Katherine's age at the time of the alleged offense was that given by Katherine, whereas it might have been corroborated by other members of her family who were present at the trial. Katherine's testimony as to her age was not controverted at the time of the trial. In connection with defendant's motion for a new trial on the ground of newly-discovered evidence the testimony of Rev. Peter P. Karaffa, formerly pastor of an Orthodox Greek Catholic Church in Detroit, was taken. According to this testimony the witness, who had kept for his personal use a record of his church activities in a small paper bound book, baptized Katherine June 20, 1926, and his record disclosed that she was born April 20, 1926. Entries in the witness' memorandum book appear in chronological order but they are in pencil and except as to dates are almost wholly written in Russian. Obviously if the witness' record was correct Katherine was past 16 years of age at the time of the alleged offense. The trial judge found the testimony of Rev. Karaffa "to be unsatisfactory." In opposition to defendant's showing on the motion, affidavits of

Katherine's mother and father were submitted, and, also, school records, all of which were in accord with Katherine's testimony at the trial, that her birth occurred March 20, 1927. And the school records show the birth of Katherine's brother, John Bokach, as April 22, 1926, which was the month in which Rev. Karaffa's record fixed Katherine's birth. Still further a certified copy from the birth records in Wayne County was produced, and from this it also appeared that Katherine was born March 20, 1927. However the original birth certificate was not filed in the county clerk's office until November 16, 1942. In view of the foregoing the trial judge was correct in denying the motion for a new trial on the ground of newly-discovered evidence. Under the record incident to the motion for a new-trial it is not at all probable that a different result would be obtained if a new trial were granted. See *Marion* v. *Savin*, 315 Mich. 448.

Other reasons and arguments presented by defendant on this appeal have been considered, but we do not find in them justification for setting aside the verdict of guilty rendered by the jury or the sentence imposed by the trial judge. The judgment entered is affirmed.

Bushnell, C. J., and Sharpe, Boyles, Reid, Butzel, and Carr, JJ., concurred. Dethmers, J., did not sit.