[Crim. No. 1125. Fourth Dist. Sept. 28, 1956.]

THE PEOPLE, Respondent, v. WILLIAM HENRY SMITH, Appellant.

Casey & Kerrigan and Richard J. Weller for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

GRIFFIN, Acting P. J.—Defendant was charged in one count of the information with committing incest with his daughter, Carolyn (aged 15) on August 31, 1955, in violation of section 285 of the Penal Code. And in count two he was charged with having committed lewd and lascivious acts with another daughter Linda (aged 13) on October 7, 1955, in violation of section 288 of the Penal Code. Defendant pleaded not guilty and waived a jury trial. He was found not guilty on count one, and guilty on count two. The court ordered a psychiatric examination of defendant and found he was not

a sexual psychopath. Defendant moved for a new trial and it was denied. He was sentenced to state's prison, execution was suspended, and he was placed on probation for three years. This appeal followed.

The points raised are that the court erred in the reception of certain evidence; that the evidence was insufficient to sustain the findings and that the court erred in not granting a new trial for these reasons.

Linda, in support of count two, testified generally that she lived with her father in Colton after her stepmother had left him; that on the weekend of October 7th to 9th she was at home alone with him and he asked her to bring him a drink to his bedroom where he was lying on the bed partially undressed; that subsequently he took off part of her clothing and started massaging her breasts and "sort of making love" to her by kissing her breasts and putting his arms around her; that he had done these things to her before and on one occasion came close to having sexual intercourse with her. She also testified that on one occasion she walked in on him when he was doing the same thing to her sister Carolyn.

The testimony of the prosecuting witness, given at the preliminary examination, was somewhat in conflict with her testimony at the trial in reference to the date and time of this claimed affair. She testified she subsequently reported these incidents to others because she was tired of living that kind of a life. She testified that when quite young she lived with her own mother and father in a nudist camp due to her mother's poor health and before she died.

A girl friend of Carolyn's, aged 15, then testified in chief for the prosecution that in October, 1955, she stayed all night at defendant's home with Carolyn; that defendant fixed them a vodka drink; that she and Carolyn put on their robes and that defendant then told Carolyn to go in the bedroom and he would massage her legs because she was tired; that Carolyn did so and she followed her to the bedroom while defendant massaged Carolyn's legs and body and suggested to the witness that he do the same for her; that she was on the bed and he pulled up her robe from the bottom, massaged her legs, and then unhooked her "bra"; that he started rubbing her back and then her breasts and she was told by him that it would develop her; that he suggested she come over often and have it done; that she then told him she had enough and accordingly went to her room to bed; that defendant thought they should be massaged again the next morning but they

refused; and that Carolyn told her this had been going on with her for some time. The witness said she later told her sister, Linda Sue, and her mother about the occurrence. Linda Sue then testified to a similar experience when she slept at defendant's home one weekend in October.

Another girl friend, 18 years old, visited Carolyn one night in the same month and defendant attempted, after massaging Carolyn, to massage the girl friend's legs and body but was repulsed. She testified that later defendant showed pictures of nude persons who lived in the nudist colony and who were related to defendant. Thereafter the People rested their case.

Defendant took the stand and testified that in 1952, he took his two daughters back East and left them with relatives; that later in 1953, he remarried and it aggravated the girls; that as a result of this they told defendant's relatives in the East that defendant had had sexual intercourse with both of them in California; that by consent of the girls they were examined there and it was found that there was no evidence of rupture of Linda's hymen; that thereafter the girls returned to California and lived with him and their stepmother whom they did not like; and that Carolyn was causing considerable trouble and had bragged to him about breaking up his marriage. He denied specifically and generally the charges made by his two daughters and the other girls but stated that he probably did massage one of the other girl's neck. He admitted massaging the two daughters on several occasions but claimed his wife was present at the time. He also said that he was at lodge on the days indicated and brought in a record of the roll-call indicating defendant's presence on certain dates enumerated. Defendant also claimed he was being treated by a doctor for sexual impotence during this period.

Essie Smith, the stepmother, testified that Carolyn was a source of trouble and had denied to her the charge made against the defendant in Illinois; that defendant did give his two daughters rubdowns or massages on certain occasions when they were tired but always in her presence; that defendant went shopping with her on the date and time charged in the first count of the information; that prior to October 1, 1955, the daughters complained to her about their father walking in on them in their privacy but did not say that defendant had committed any indecent acts towards them. There was evidence of complaints made to others by the two girls concerning defendant's conduct.

Without further discussion, it clearly appears that the evidence is sufficient to support the court's finding as to the charge contained in count two.

The only other question is the claimed error in admitting evidence of similar conduct toward the other girls as part of the People's case in chief. Defendant relies principally upon the holding in *People* v. *Anthony,* 185 Cal. 152 [196 P. 47]; *People* v. *Westek,* 31 Cal.2d 469, 476 [190 P.2d 9]; *People* v. *Asavis,* 22 Cal.App.2d 492 [71 P.2d 307]; *People* v. *Buchel,* 141 Cal.App.2d 91 [296 P.2d 113]; *People* v. *Hills,* 30 Cal.2d 694 [185 P.2d 11]; and *People* v. *Rogers,* 26 Cal.App.2d 371 [79 P.2d 404], disapproved in *People* v. *Westek, supra.*

It is the general rule, gathered from the above authorities, that in a prosecution for committing lewd and lascivious acts, prohibited by section 288 of the Penal Code, evidence that defendant perpetrated similar acts with a person or persons other than the prosecuting witness is inadmissible; that in this state the trend of decisions has been to allow evidence of other crimes generally to show guilty knowledge, motive, intent or a common scheme or plan, but in cases involving lewdness the rule that evidence of other crimes is not admissible has not been relaxed.

There are cases upholding certain exceptions to the general rule such as the Westek case where defendant, on direct examination, was asked whether he had ever committed any lewd act on certain of the prosecuting witnesses and he replied that he may have so touched them but that it was done without any lustful intent, and then to emphasize his innocence defendant volunteered the statement that he had never at any time or at any place committed on any boy any sexual crime as was charged. The prosecution had the right, on rebuttal, to present evidence which would tend to contradict defendant's self-serving statement or to weaken or modify its effect, such as evidence that he had committed similar acts with boys other than the prosecuting witnesses. (See also *People* v. *Hoffman,* 199 Cal. 155, 162 [248 P. 504]; *People* v. *Turco,* 29 Cal.App. 608, 611 [156 P. 1001]; *People* v. *Harrison,* 46 Cal.App.2d 779 [117 P.2d 19]; *People* v. *Evans,* 113 Cal.App.2d 124, 126 [247 P.2d 915]; and *People* v. *Boyd,* 95 Cal.App.2d 831 [213 P.2d 724].) In the latter case other claimed offenses against the sister of the prosecuting witness took place in the presence of the prosecuting witness and the facts indicated circumstances from which it could

be inferred that defendant intended a second offense upon the prosecutrix.

 Assuming it was error to allow testimony of the commission of claimed similar offenses on other girls when offered in evidence as a part of the People's case in chief, it affirmatively appears that counsel for defendant made no objection to the reception of such testimony at the time or during the trial, and without moving to strike such evidence, proceeded to cross-examine these witnesses in full in relation to such testimony.

It further appears from the proceedings on the motion for new trial that counsel for the defendant failed to call the court's attention to any such claimed error but rested solely on the insufficiency of the evidence to support the findings.

It further appears that the trial court had no opportunity to rule on the admissibility of such testimony and the question was raised for the first time on appeal. Defendant is therefore precluded from raising this question for the first time in this court. *People* v. *Boyd, supra,* page 833, was affirmed on this same additional ground. (See also *People* v. *Simeone,* 26 Cal.2d 795 [161 P.2d 369] ; *People* v. *Westek, supra*; and *People* v. *Buchel, supra.*) The order denying a new trial was justified.

Judgment affirmed.

Mussell, J., and Burch, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.