PEOPLE v MITCHELL

OPINION OF THE COURT

1. CRIMINAL LAW—EVIDENCE—MOTION TO SUPPRESS—DISCRETION.

The trial judge did not abuse his discretion in refusing to turn aside from a criminal trial to conduct a separate hearing upon the admissibility of evidence or in refusing to allow a second continuance where defense counsel failed to make a pretrial motion to suppress the evidence as a matter of strategy, argued that portion not originally considered harmful became prejudicial, yet never revealed to the trial judge the precise nature of the prejudice, and where the record does not disclose a miscarriage of justice requiring consideration of the merits of an unpreserved issue.

2. HOMICIDE—EVIDENCE—CHARACTER—HOMOSEXUALITY—PROOF    OF SPECIFIC ACTS—ADMISSIBILITY.

In a trial for murder evidence of a defendant's homosexuality introduced to prove defendant's bad character by proof of other bad acts after defendant had claimed self-defense precipitated by the deceased's alleged homosexual assault and that the defendant had never made homosexual advances is not limited to proof of a reputation for homosexuality but may include proof of specific acts.

DISSENT BY BRONSON, J.

3. CRIMINAL LAW—EVIDENCE—OTHER OFFENSES—ADMISSIBILITY.

*Evidence regarding other crimes and misconduct is inadmissible to prove a defendant's criminal disposition or propensity to commit the crime charged.*

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 225.
[2, 4] 29 Am Jur 2d, Evidence §§ 344, 345, 351.
    40 Am Jur 2d, Homicide § 307.
[3] 29 Am Jur 2d, Evidence § 324.

4. Homicide—Evidence—Impeachment—Proof of Specific Acts—
    Admissibility.

   *Proof of specific acts of homosexual conduct between the defend-
   ant in a murder trial and a third person, portraying the
   defendant as the solicitor, should not be admissible to rebut a
   claim of self-defense portraying the deceased as the sexual
   aggressor because the defendant's alleged misconduct with a
   third person is a collateral issue, irrelevant to the crime
   charged, and highly prejudicial.*

Appeal from Lapeer, James P. Churchill, J.
Submitted Division 2 June 6, 1972, at Lansing.
(Docket No. 11987.) Decided February 21, 1973.

Garry D. Mitchell was convicted of second-de-
gree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *Martin E. Clem-
ents,* Prosecuting Attorney, for the people.

*Clayton E. Preisel,* for defendant on appeal.

Before: Bronson, P. J., and Danhof and Van
Valkenburg,* JJ.

Danhof, J. Defendant was convicted by jury
verdict of second-degree murder. MCLA 750.317;
MSA 28.549. He appeals, raising three allegations
of error predicated upon the trial judge's rulings.
Reversible error is claimed by these rulings which
(1) admitted into evidence defendant's statement
made to the police after his arrest because the
motion made at trial to suppress was untimely, (2)
permitted the prosecution to rebut defendant's
claim that he was homosexually assaulted by the
deceased with testimony regarding defendant's so-
licitation of homosexual relations with a third

---

* Former circuit judge, sitting on the Court of Appeals by assign-
ment pursuant to Const 1963, art 6, § 23 as amended in 1968.

party, and (3) denied defendant's request for a second continuance to produce an additional surre-buttal witness.

At the time the sequence of events leading up to the homicide were set in motion, defendant was on parole. On November 13, 1970, defendant's parole officer received a letter from defendant relating the following story: On Sunday evening, November 8, defendant stopped at the Hillside Tavern located on highway M-24. Near closing time defendant met the deceased, Donald Guthrie, whom he asked for a ride to Lapeer. The deceased invited defendant to spend the night with him and he accepted. When defendant awoke the following morning, deceased was drinking beer at the kitchen table. The deceased offered defendant an "eye-opener" and they drank a quantity of beer and whiskey. Defendant became ill and the deceased told him to lie down in the back bedroom. Defendant was awakened by deceased tugging at his pants with "real big" eyes. He grabbed defendant's penis and defendant reacted by hitting him five or six times. The deceased stepped backwards, reached behind him, and produced a knife. A struggle ensued during which defendant secured possession of the knife and stabbed the deceased in the chest.

Overcome by panic, defendant took the deceased's car keys and fled in his vehicle. Defendant "drove around" for a few days attempting to decide whether or not to surrender to authorities. He wanted to surrender but was afraid he would be convicted since he was an ex-convict and his claim of self-defense would not be believed. He gave the name and location of the deceased and concluded the letter by requesting that someone be notified since he did not know whether the man was dead.

This letter was forwarded to the Lapeer State

Police post which dispatched an officer to the given address. The officer subsequently confirmed the homicide. Defendant was in an automobile which was stopped by Vassar city police officers for speeding in the early morning hours of November 14, 1970. After his identity failed to match the registration certificate listing Donald Guthrie as owner, the officers contacted the Lapeer State Police post for an "identification check" of the vehicle's license plates. Upon being informed of the homicide, they arrested defendant and transported him to the Vassar City Police Department. Custody of defendant was subsequently transferred to Lapeer State Police officers. After they advised defendant of his *Miranda*[1] rights, he offered a statement in substantial compliance with the letter. On November 20, 1970, defendant gave the police a slightly more elaborate statement which conformed to his earlier statement and letter.

At trial defendant's letter and two statements were offered and received into evidence. The defendant objected to the admission of the statement of November 20, 1970, contending that it was involuntarily procured. The trial judge denied defendant's motion to suppress, finding it untimely. Since the November 20th statement contained ambiguous references to defendant's involvement in homosexual conduct, defendant, upon taking the stand, testified that he had never solicited such relations. The prosecution offered one of defendant's three cellmates during his pretrial confinement as a rebuttal witness to testify to defendant's solicitation of homosexual relations. Defendant responded by requesting and obtaining a continuance and offering one of the remaining cellmates

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

as a surrebuttal witness. Defendant requested a second continuance to secure the attendance of the final cellmate for surrebuttal. Believing further delay to be unjustified, the trial judge denied the motion. At the conclusion of trial, the jury returned a verdict of guilty.

Defendant first challenges the trial judge's denial of his motion to suppress the allegedly involuntary statement of November 20, 1970, submitted at trial. The procedure followed by the courts of this state to test the voluntariness of statements and confessions elicited from defendants during police interrogation is found in *People v Walker,* 374 Mich 331 (On Rehearing, 1965). A *Walker* hearing, contemplating a pretrial motion, conforms with the general rule which requires a pretrial motion to suppress evidence upon pain of waiver. *People v Ferguson,* 376 Mich 90 (1965); *People v Smith,* 19 Mich App 359 (1969); *People v Childers,* 20 Mich App 639 (1969); *People v Paffhousen,* 20 Mich App 346 (1969). *People v Willie Williams #1,* 23 Mich App 129 (1970). This rule is not without exception since the authorities permit the trial judge within his discretion to entertain a motion to suppress at trial. Whether a trial judge abuses his discretion by not turning aside from a criminal case to conduct a separate hearing upon the admissibility of evidence may be tested by the existence of "special circumstances"[2] justifying the delay. Although this concept has not been fully defined, the primary example is offered in *People v Ferguson, supra,* a case where the factual circumstances constituting the illegality are not known prior to trial.

In the present case, defense counsel, when questioned by the trial judge regarding the delay in

[2] *People v Ferguson,* 376 Mich 90, 94 (1965).

submitting the motion to suppress, answered that it was a matter of strategy. He argued that certain portions of the statement not originally considered harmful subsequently became prejudicial. The precise nature of this prejudice was neither revealed to the trial judge nor appears in defendant's appellate brief. An application of the cited authorities fails to reveal an abuse of discretion. Further, based upon the record before us, we cannot conclude that the statement, even if improperly admitted, caused a miscarriage of justice requiring us to consider the merits of an unpreserved issue.[3]

The record shows no abuse of discretion in refusing to allow a second continuance.

The significant issue before us is raised by defendant's challenge to the admission of evidence regarding his alleged homosexual conduct with others. The issue of homosexuality was interjected into the case by defendant's reliance upon a claim of self-defense precipitated by the deceased's alleged homosexual assault. The defendant also testified that he had never made homosexual advances. When the defendant did these things he placed his character in issue insofar as it involves homosexuality. By placing his character in issue he rendered it proper for the prosecution to introduce evidence that his character was not as he said it was. Wigmore, Evidence (3d ed), § 58, pp 457–458.

Finding no Michigan authority that is in point on the question of proving bad character by proof of other bad acts, in a case similar to the one at bar, we turn to a line of California cases which we find highly persuasive. *People v Westek*, 31 Cal 2d 469; 190 P2d 9 (1948), was a prosecution for sodomy and lewd and lascivious conduct. On direct

---

[3] *People v Degraffenreid*, 19 Mich App 702 (1969).

examination the defendant testified that he had never committed any acts of sodomy or lewdness. The prosecution then produced several witnesses who testified that he had performed such acts on them. The Supreme Court of California found such evidence to be admissible. The Court reasoned that unless the prosecutor was allowed to use such evidence the defendant would be able to place himself in an especially favorable light before the jury, and the prosecution would not be allowed to rebut the false impression thus conveyed. We agree with the reasoning of the California Court.

Subsequent California cases have applied the same reasoning. *People v Goff,* 100 Cal App 2d 166; 223 P2d 27 (1950), applied the rule in another lewdness case. *People v LeBeau,* 235 P2d 850 (Cal App, 1951), was a narcotics case. *People v Hughes,* 123 Cal App 2d 767; 267 P2d 376 (1954), was an assault case. We are convinced that the rule should be applied to the case at bar.

We are not impressed by the argument that evidence of homosexuality should be limited to proof of a reputation for homosexuality. To adopt such a rule would be to reject the more reliable of two types of proof. A homosexual will often have no reputation as such, and a reputation for homosexuality will all too often be based on the rankest of speculation. Proof of specific acts is by far the most reliable means of proof.

Affirmed.

VAN VALKENBURG, J., concurred.

BRONSON, P. J. *(dissenting).* The use of character evidence, like prior convictions, for purposes of impeaching a defendant's credibility while contradicting a proffered defense may well become the determinative factor in a criminal trial. The juris-

prudence of this state rejects the proposition that other crimes and misconduct are admissible to prove a defendant's criminal disposition or propensity to commit the crime charged. Evidentiary exceptions which permit the admission of prior convictions and misconduct for limited purposes tread closely to the edge of this proposition. The courts of this state must be sensitive to the very real possibility that a defendant may be convicted by a jury for past crimes and guard against such injustice by carefully evaluating the propriety and permissible scope of the exceptions employed. I cannot agree with the majority opinion since the type of rebuttal evidence challenged neither falls within nor should fall within currently recognized exceptions.

The present appeal is based upon the following sequence of events. The prosecution, during its case in chief, offered defendant's letter to his probation officer and two pretrial statements describing the altercation and homicide. Since the statement of November 20, 1970, contained ambiguous references to defendant's involvement in homosexual conduct, defendant upon taking the stand denied being the solicitor and claimed to have been the victim on such occasions. During cross-examination, the prosecutor questioned defendant upon his alleged solicitation of homosexual relations with prison cellmates, which he denied. The prosecutor proceeded to offer the testimony of Kenneth Maxwell, one of defendant's three cellmates during his pretrial confinement, for purposes of rebutting this denial and the defense that defendant did not initiate or solicit the deceased's homosexual advance. The trial judge permitted defendant to secure the attendance of Leo Baker, one of the remaining cellmates during

the same time, as a surrebuttal witness. The specific issue created by the prosecution's proffered evidence may be stated as follows:

*Are specific acts of homosexual conduct between defendant and a third person portraying defendant as the solicitor admissible to rebut a claim of self-defense portraying the deceased as the sexual aggressor?*

My analysis of this complex evidentiary issue begins with a recognition of the general underlying evidentiary proposition that misconduct on other occasions is inadmissible to show that a person had a greater propensity to commit the crime charged. *People v Wright,* 294 Mich 20 (1940); *People v Riddle,* 322 Mich 199 (1948); *People v Askar,* 8 Mich App 95 (1967); *People v Heiss,* 30 Mich App 126 (1971); People v Insley, 36 Mich App 593 (1971).[1] A number of limited exceptions have been created by the Legislature and judiciary. I have carefully scrutinized each exception in an attempt to place the issue raised in the appropriate category for disposition. Since the prosecution's rebuttal evidence was clearly offered to discredit defendant's allegations, it appears to fall within the general concept of impeachment. Not finding one of the traditionally recognized impeachment procedures[2] applicable, I have employed the analogous concept of impeachment by "contradiction".

Impeachment by "contradiction" is described by McCormick, in his treatise on evidence, to be a process where a witness' statements on a specific

[1] *See* 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 446, p 549; McCormick, Evidence (2d ed), § 42, p 82.

[2] *See* 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), §§ 436, 437, and 438, pp 534–542; MCLA 600.2158; MSA 27A.2158; *People v Dellabonda,* 265 Mich 486 (1933).

matter are contradicted by the contrary testimony of a second witness.[3] The impeaching value of this approach is that:

"It merely tends to show—for Witness One may be right and Witness Two may be mistaken—that Witness One has erred or falsified as to certain particular facts, and therefore is capable of error or lying, and this should be considered negatively in weighing his other statements."[4]

To prevent prejudicial misuse a safeguarding corollary should be employed which precludes contradiction upon collateral matters. McCormick delineates two kinds of facts not considered collateral which are relevant to our problem: (1) facts relevant to the substantive issue in the case and (2) facts used "to pull out the linchpin of the [witness's] story". This latter concept is defined as "the contradiction of any part of the witness's account of the *background and circumstances of a material transaction*".[5] (Emphasis added.) This test is neces-

[3] McCormick, Evidence (2d ed), § 47, pp 97–100.

[4] *Id.,* pp 97–98.

[5] Acceptance of this approach is found in Michigan authorities under the label "rebuttal evidence". This case law is limited to evidence employed to rebut certain facts involving the crime which were relied upon by defendant and does not include evidence of other offenses or misconduct. *See, e.g., People v DeFrance,* 104 Mich 563 (1895) (where the Court admitted the testimony of a witness that defendant was in St. Paul on April 11, 1892, to rebut defendant's claim that he was elsewhere on that date indorsing a promissory note); *People v Row,* 135 Mich 505 (1904) (where the Court found error in the trial judge's exclusion of a witness' testimony offered to rebut the testimony of defendant's doctor and support defendant's alibi); *Strudgeon v Village of Sand Beach,* 107 Mich 496 (1895) (where the Court permitted a witness' denial of his conversation with a third person regarding the cause of plaintiff's injury to be rebutted by the testimony of that person); *People v Weems,* 15 Mich App 22 (1968) (where the Court admitted the testimony of a witness' mother to rebut the witness' denial of a conversation in which she admitted being uncertain of her identification of defendant). *Contrast People v Joseph Barbara, Jr.,* 23 Mich App 540 (1970). The extension of this approach to include the evidence at issue is rejected for the reasons stated herein.

sarily vague since "it must meet an indefinite variety of situations". Although the evidence at issue satisfies the contradiction concept, its admissibility depends upon the scope of these two approaches used to determine whether it involves a "collateral" issue.

This question may be answered by reference to two analogies. The first analogy is provided by rape cases in which the prosecutrix' consent is at issue. The type of evidence which is admissible to contradict the claim of no consent by impeaching the character of the prosecutrix has been delineated by our courts. In *People v McLean,* 71 Mich 309, 312 (1888), the Court was confronted with an attempt to impeach the prosecutrix by evidence of her prior sexual relations with a third person. The *McLean* Court recognized the general rule permit-. ting the character of the prosecutrix for chastity to be impeached, stating:

"Evidence that the prosecutrix is a common prostitute, or that her character for chastity is bad, is admissible, and particular acts of unchastity or sexual intercourse with the defendant may be shown; *but evidence of such acts with a third person is not admissible."* (Citation omitted.) (Emphasis added.)

This admission of evidence of prior sexual relations between the parties is relevant to the issue of consent and should not be deemed collateral.[6] Such acts showing "opportunity, disposition of the parties and intimate relations tending to break down self-respect"[7] have a higher degree of reliability

---

[6] *Cf. People v Ayres,* 195 Mich 274 (1917).

[7] This standard providing an exception for admissibility is found primarily in cases involving statutory rape. *People v Davis,* 175 Mich 594 (1913); *People v Gengels,* 218 Mich 632 (1922); *People v Trzil,* 235 Mich 469 (1926); *People v DerMartzex,* 29 Mich App 213 (1970), *leave granted* 387 Mich 759 (1972). *See People v Thomas Smith,* 388 Mich 93 (1972) (where the Court discusses these cases and finds admission

enabling the balance to shift from a prejudicial effect to probative value.

The *McLean* Court's exclusion of specific acts of misconduct with third persons represents a realistic appraisal of the reliability of the proffered evidence. There are an unspecified number of reasons why the prosecutrix may consent to sexual relations with a third person but refuse defendant. The totality of the circumstances becomes significantly dissimilar so that a continuance of consensual behavior becomes unreliable. For this reason the misconduct with others may be deemed to raise a collateral issue.[8] General reputation evidence of misconduct may be admitted as being consistent with a policy permitting the impeachment of character. *People v Ryno,* 148 Mich 137 (1907).[9]

The second analogy is provided by homicide and assault cases in which self-defense is at issue. The admissibility of a party's violent conduct on prior occasions to contradict his defense that he was not the aggressor has been determined by our courts. Similar to sex offenses, testimony regarding the prior relations between the parties, including threats, has been admitted for this purpose. *Brownell v People,* 38 Mich 732 (1878); *People v Durham,* 170 Mich 598 (1912); *People v Griner,* 30 Mich App 612 (1971).[10] Likewise, the *Brownell*

of subsequent acts of intercourse between the parties justified upon the statutory exception of intent, motive, plan, or scheme).

Recently this standard has been extended to cases involving sodomy, gross indecency, and indecent liberties and is equally applicable to the remaining types of sexual offenses. *People v Askar,* 8 Mich App 95 (1967); *People v Oaks,* 24 Mich App 7 (1970); *People v Heiss,* 30 Mich App 126 (1971).

[8] *Cf. People v Knapp,* 42 Mich 267 (1879).

[9] *Cf. Harris v Neal,* 153 Mich 57 (1908).

[10] *Cf. People v Mulvaney,* 171 Mich 272 (1912); *People v Reycraft,* 156 Mich 451 (1908).

Court excluded evidence of defendant's act of violence upon another person at a different time and place.[11] The Court in *People v Farrell,* 137 Mich 127 (1904), affirmed this approach but found the deceased's general reputation for violence to be admissible.[12] This rationale is equally applicable to defendant's general reputation for violence. Whether or not the acts of misconduct constitute a separate crime, their inadmissibility is based upon the conclusion that they are collateral matters.[13]

In the present case defendant relied upon the claim of self-defense and injected the issue of homosexuality by imputing sexually aggressive conduct to the deceased. Applying the above analogies to the prosecution's rebuttal evidence, I cannot conclude that it falls within the purview of either category of facts not considered collateral by McCormick. The question of who initiated or solicited the homosexual relations between the parties is a substantive issue in the case. The question of whether defendant or his cellmate solicited the homosexual relations at a time subsequent to the crime charged embodies a distinct issue which is insubstantial by comparison. Neither can this evidence "pull out the linchpin of the story" because it presents a number of inferences upon which the jury must speculate. The jury must accept defendant's involvement in homosexual conduct, find him to be the solicitor on prior or subsequent occasions, and conclude that he was the solicitor on the day in question.

---

[11] *Accord, People v Kenyon,* 93 Mich 19 (1892); *People v Cellura,* 288 Mich 54 (1939); *People v Wright,* 294 Mich 20 (1940).

[12] *Accord, People v Cellura, supra; People v Stallworth,* 364 Mich 528 (1961); *People v Burks,* 30 Mich App 102 (1971); *People v Redmond,* 30 Mich App 117 (1971); *People v Rapier,* 43 Mich App 297 (1972).

[13] *See People v Griffen,* 36 Mich App 368, 379 (1971) (dissenting opinion by Judge LEVIN).

Similar to rape cases involving the issue of consent, evidence of homosexual conduct with third persons is not sufficiently reliable to counterbalance its prejudicial effect. The same conclusion is reached by a comparison with homicide and assault cases excluding acts of violence upon third persons. Since the alleged conduct between defendant and his cellmate is an indictable offense,[14] the admission of separate offenses for which defendant has not been tried, even though similar, causes me grave concern.[15]

The majority opinion reaches a contrary conclusion by adopting California decisions permitting the prosecution to prove defendant's bad character by proof of other bad acts. *People v Westek,* 31 Cal 2d 469; 190 P2d 9 (1948), and its progeny represent several limited exceptions to California's adherence to the principle that prior misconduct is not admissible to prove defendant's criminal disposition or propensity to commit the crime charged. In *Westek,* defendant was charged with lewd and lascivious conduct with several young boys, and upon taking the stand, testified that he had never "at any time" committed any act of sodomy, or any lewdness "in any other county" upon any boy. The *Westek* Court found that such a complete denial upon direct examination which tended to place defendant in an especially favorable light with the jury opened the door for the admission of the rebuttal testimony of other persons. The *Westek* Court distinguished its case from cases rejecting the admission of evidence when presented affirmatively by the prosecution during its case in chief.

---

[14] MCLA 750.338; MSA 28.570 or MCLA 750.340; MSA 28.572.

[15] This reasoning has been utilized in cases involving sexual offenses to exclude defendant's acts of sexual intercourse with another. *People v Coston,* 187 Mich 538, 545 (1915); *People v Nelson,* 227 Mich 552 (1924). *But see People v Geanakopoulos,* 320 Mich 430 (1948).

A secondary basis for admitting the rebuttal evidence at issue was found by the *Westek* Court. Since defendant admitted touching the complainant but denied a lewd intent, this Court found that he injected the issue of intent into the case and the challenged testimony was admissible for the limited purpose of proving such intent. Upon this background California courts have established the following exceptions justifying the admissibility of defendant's misconduct with third persons: (1) defendant opened the door for rebuttal evidence by an all-inclusive denial[16] or (2) the evidence establishes the defendant's identity, intent, motive, common plan, or scheme.[17]

I cannot agree that these cases justify the admission of the rebuttal evidence at issue or that the proffered defense opened the door as wide as the majority believes. The defense that the deceased was the sexual aggressor, at best, opened the door for the admission of prior acts involving the parties. Unlike *Westek,* defendant did not offer an all-inclusive denial regarding his solicitation of homosexual relations on direct examination. The references to defendant's homosexual conduct with others was initiated by the prosecutor's admission of defendant's pre-trial statement. The prosecutor should not be permitted to broaden the scope of defendant's denials in this matter so as to create a need for rebuttal evidence. I have difficulty applying the California cases to the present situation since they rely in part on the principle that de-

[16] *People v Smith,* 144 Cal App 2d 745; 301 P2d 609 (1956); *People v Sylvia,* 54 Cal 2d 115; 351 P2d 781; 4 Cal Rptr 509 (1960). *Contrast, People v Baskett,* 237 Cal App 2d 712; 47 Cal Rptr 274 (1965).

[17] *People v Kelley,* 66 Cal 2d 232; 424 P2d 947; 57 Cal Rptr 363 (1967); *People v Cramer,* 67 Cal 2d 126; 429 P2d 582; 60 Cal Rptr 230 (1967); *People v Pierce,* 269 Cal App 2d 193; 75 Cal Rptr 257 (1969); *People v Wells,* 13 Cal App 3d 265; 91 Cal Rptr 460 (1970).

fendant's conduct with third persons is admissible to prove intent, motive, common plan, or scheme. Michigan's expressed rejection of this principle[18] vis-a-vis sex-related offenses renders their application dubious.

Assuming *arguendo* the California cases are directly applicable, I would challenge their adoption as unsound. Unlike the majority of California decisions in which the admitted offenses are similar to the charged offense, the present charge of murder is completely dissimilar from defendant's alleged solicitation of homosexual conduct with a cellmate. This difference is critical since defendant was forced to defend two trials simultaneously: one for murder and one for homosexual misconduct. The disruption of the primary trial by the submission of rebuttal and surrebuttal witnesses on this secondary issue for the avowed purpose of proving that defendant was a liar undermines the orderly administration of justice and was highly prejudicial. The single related and relevant issue created by the proffered defense was the prior relationship between the parties, if any.

The prosecution is not left defenseless and precluded from exposing defendants who attempt to hide behind fabrications. The technique of cross-examination offers a tool which may be skillfully used to expose hesitation, indifference, improbability, and the telltale contradictions in defendant's story. The prosecutor may similarly challenge defendant's general reputation. However, the admission of defendant's misconduct with third persons

---

[18] *See, e.g., People v Askar,* 8 Mich App 95 (1967) (sodomy case); *People v Oaks,* 24 Mich App 7 (1970) (indecent liberties case); *People v Heiss,* 30 Mich App 126 (1971) (gross indecency case). *But see, People v Thomas Smith,* 388 Mich 93 (1972) (where the Court admits subsequent acts between the *parties* as tending to prove defendant's common plan, scheme, or system).

creates an inquisition into his character which is inconsistent with the precedent governing the scope of rebuttal evidence and analogous areas of the law.[19] The guarantee that a defendant will be provided with a fair and impartial trial upon the offense charged cannot be fulfilled by the admission of evidence upon collateral issues. Upon the foregoing analysis I would reverse defendant's conviction.

---

[19] *See, e.g., People v Guzanich,* 13 Mich App 634 (1968) (where the Court, speaking through a per curiam opinion, concluded that the cross-examination of defendant regarding a prior charge of sodomy in a judge trial upon a charge of indecent liberties with a minor male was error).