PEOPLE v. DOWD.

1. HOMICIDE—EVIDENCE—IMPRESSIONS OF WITNESSES.
    It is error in a prosecution for homicide to permit a witness to state her impression that respondent was envious of deceased.

2. SAME—TESTIMONY AT INQUEST—IDENTIFICATION—USE IN ARGUMENT.
    Where a witness in a homicide case is shown his testimony before the coroner, and admits his signature thereto, and it is then offered in evidence and admitted without objection, it is error to refuse to allow it to be read in argument on the ground that it was not sufficiently identified.

3. SAME—SELF-DEFENSE—DISPOSITION OF DECEASED.
    In a prosecution for homicide, specific acts of violence on the part of deceased towards other persons, which do not form part of the res gestœ, are not admissible in support of a claim of self-defense.

Exceptions before judgment from Allegan; Padgham, J. Submitted February 15, 1901. Decided June 17, 1901.

Charles Dowd was convicted of manslaughter. Reversed.

*W. B. Williams & Son & Thompson* (*Wilkes & Hoffman*, of counsel), for appellant.

*Charles N. Thew*, Prosecuting Attorney, and *Gerrit J. Diekema*, Assistant Prosecuting Attorney, for the people.

MONTGOMERY, C. J.   The respondent was convicted of
the crime of manslaughter.   The information charged
murder.   The killing occurred in an affray or contest over
the possession of a house.   The circuit judge charged the
jury as follows:

"I charge you that if you find from the evidence that,
in this affray between Charles and Ernest Dowd on that
Sunday afternoon, Ernest assaulted Charles with a stick,
and that Charles did what he could to avoid the affray
and get away from the danger threatening him, then the
question is, Did Charles Dowd, under the circumstances
of the assault, as it appeared to him, honestly believe that
he was in danger of his life or of great bodily harm, and
that it was necessary for him to do what he did in order
to save himself from such apparent threatened danger?
If he did so actually believe, then he would be justified in
taking the life of his assailant."

It is claimed that in other portions of the charge the
court left it open to the jury to convict of homicide
if the respondent went further in the use of force than
was actually necessary to his defense, even though the
force used may have appeared necessary to him.   It is
possible that some portion of the charge, standing by
itself, may be open to this criticism; but, as we feel con-
strained to reverse the case on other grounds, we find it
unnecessary to determine whether the language employed
was calculated to mislead the jury.

The deceased was a brother of respondent, and the
mother was called as a witness.   She was permitted to
testify as follows:

"*Q.* From conversations you have had with your sons,
do you know what the feelings were between them?

"*A.* They were not the most friendly that ever was.

"*Q.* Were they not unfriendly?

"*A.* Sometimes.

"*Q.* What was the trouble?

"*A.* I couldn't say.

"*Q.* Was it about the property?

"*A.* Probably it was; I could not be sure.   There was
some envy, I think.

"*Mr. Wilkes:* I move to strike that out. (Motion denied, and defendant excepted.)

"*Q.* Envy on whose part?

"*A.* I don't know as I am right,—the impression I had that Charles was a little envious; thought Ernest was having a better chance than he.

"*Mr. Wilkes:* I move to strike that out as incompetent.

"*The Court:* Let it stand. (Defendant excepted.)"

We think it was error to permit the witness to state her impressions as to what the state of respondent's mind was. It is true, as stated by counsel for the people, that a witness may testify as to a state of affection between parties; but this is generally based upon outward manifestation. Whether one is actuated by envy is something not within the power of any witness to testify to as a fact.

Thomas Hinton, a witness to the *res gestœ*, was called by the people, and gave testimony of a damaging character. On cross-examination he was shown his testimony taken at the coroner's inquest, and was asked if the signature appended was his signature. He answered that it was. His testimony taken at the inquest was then offered in evidence, and received without objection. On the argument, respondent's counsel proposed to read this testimony, when the people's counsel objected, on the ground that it was not sufficiently identified, as the witness was not asked whether the testimony was read over to him at the time he signed it, or whether he knew the contents of the paper. The objection was sustained. This ruling was error. It is not necessary to inquire whether the objection urged on the argument would have been good if made when the testimony was offered in the first instance. The testimony had been received in evidence, and the respondent's counsel had a clear right to use it.

It is contended that the exclusion of this testimony did no injury to respondent, as there is no material discrepancy between the testimony given on the trial of this case and that at the inquest; but we are not able to agree with this contention. There is such discrepancy as might have

affected the credibility of the witness in the minds of the jury.

We think no error was committed in excluding evidence of specific acts of violence of deceased towards other persons, not a part of the *res gestœ*. Whart. Cr. Ev. § 71; note to *Boyle v. State*, 21 Cent. Law J. 70. *People* v. *Harris*, 95 Mich. 87 (54 N. W. 648), does not sustain the admissibility of evidence of isolated acts of violence directed towards third parties. In that case the threats were directed towards the accused.

None of the other questions raised are likely to arise on a new trial.

Conviction reversed, and a new trial ordered.

The other Justices concurred.