## PEOPLE *v.* FARRELL.

1. HOMICIDE — SELF-DEFENSE — EVIDENCE — DECLARATIONS OF DE-
CEASED.

Where, on a trial for murder, the respondent claimed the kill-
ing was in self-defense, it was permissible for the people to
show that the deceased said, as he approached respondent
and was within four or five feet of him, that he intended to
bid respondent "Good night."

2. CRIMINAL LAW—EVIDENCE—OTHER OFFENSE.

On a trial for murder, testimony by the sheriff that a con-
versation with respondent, immediately after the shooting,
occurred in a saloon, was not inadmissible because it showed
a violation of the liquor law requiring saloons to be closed
after 10 o'clock.

3. SAME.

Where respondent, on his trial for murder, testified to a diffi-
culty with the deceased on the Sunday prior to the shooting,
it was proper to show, on his cross-examination, that such
difficulty occurred in a saloon, though it proved that he had
violated the liquor law.

4. SAME—SELF-DEFENSE.

Testimony on behalf of the people, on a murder trial, that the
respondent had drawn a revolver on other persons before he
shot the deceased, was admissible, as it would tend to lessen
the credit given to his claim of self-defense, although it
tended to prove the respondent guilty of a statutory offense.

5. HOMICIDE—EVIDENCE—CHARACTER OF DECEASED.

A respondent, on trial for murder, cannot show that deceased
at one time committed a specific act of violence not observed
by the respondent, though he may have been informed of it
before the killing of deceased.

6. CRIMINAL LAW—OBJECTIONS TO TESTIMONY—SUFFICIENCY.

An objection to the testimony of a physician that a wound
caused death, on the ground that there is nothing in the rec-
ord that qualifies it and makes it competent, does not raise
the question that the physician was not shown to have the
qualifications required by 2 Comp. Laws, § 5280, to enable
him to practice medicine.

7. SAME—EVIDENCE—HEARSAY—CAUSE OF DEATH.
   Testimony of a physician that he learned, not from observation
   but from information, that deceased did not have proper
   care, is hearsay, and has no tendency to prove the deceased
   died from improper care.

8. SAME—INSTRUCTIONS—REQUESTS—DEFENDANT'S THEORY.
   Where respondent's requests to charge are correct and proper,
   for the court, on giving them, to state that they present his
   theory of the case, is prejudicial error, as it indicates that the
   jury are not bound to follow them.

Error to Missaukee; Chittenden, J. Submitted April
21, 1904. (Docket No. 187.) ◦ Decided July 7, 1904.

John H. Farrell was convicted of manslaughter and
sentenced to imprisonment in the State prison at Jackson.
Reversed.

*Charles A. Withey* and *William F. McKnight*, for
appellant.

*F. O. Gaffney*, Prosecuting Attorney, for the people.

CARPENTER, J. On the 2d of June, 1903, respondent
was tending bar in a hotel in the village of Stittsville,
Missaukee county, in this State. He refused to sell one
George Temple liquor on credit. Temple undertook to
get behind the bar and help himself, and respondent drove
him away by threatening to shoot him with a revolver.
Temple and the other inmates of the barroom then went
into an adjoining office, and respondent commenced to
close the doors between the two rooms. While in this act,
Temple approached, and respondent shot him. On June
9th Temple died from the effect of this wound. Respond-
ent was tried on a charge of murder, and convicted of
manslaughter. Temple, when partly under the influence
of liquor, as he was at this time, was in fact, and was
known to respondent to be, a quarrelsome man, who had
committed other assaults. The testimony was conflicting
as to whether Temple threatened to inflict bodily harm
upon respondent. Respondent and others testified that he

did, and it was the claim of respondent that he shot Temple because he feared his life was in danger.

The people were permitted to prove that Temple stated as he approached respondent, just before he was shot, that he intended to bid respondent "Good night." We think this testimony was properly admitted. According to the testimony of witness Gorthy, respondent was then only four or five feet away, and could, therefore, have heard Temple's statement.

The people were also permitted to prove a conversation between respondent and the deputy sheriff, in the saloon, shortly after the occurrence. In this conversation, respondent stated that he shot Temple, and that he was justified in doing it, and that he was "not excited a bit." It is not claimed that this testimony was not properly admitted, but the contention was made that it was improper for the witness to be permitted to say that it occurred in the saloon, since that justified the argument subsequently made that the law compelling the saloon to be closed at 10 o'clock was thereby violated. This point was not well taken. The testimony of the witness would have been incomplete, had he not stated where the conversation occurred.

On respondent's direct examination, he testified to a difficulty with Temple on the Sunday prior to the shooting. Complaint is made because the people, on respondent's cross-examination, were permitted to show that this difficulty on Sunday occurred in the saloon. There is no merit in this complaint. Having testified to this episode, the people certainly had a right to cross-examine respondent concerning it, though the cross-examination proved, as it did, that he had violated another law. See *People* v. *Gray*, 135 Mich. 542 (98 N. W. 261).

On cross-examination of respondent, the people were permitted to prove that he had drawn a revolver on other persons before he shot Temple. This testimony tended to prove respondent guilty of a statutory offense. Section 11509, 3 Comp. Laws. It would have a natural ten-

137 MICH.—9.

dency to lessen the credit the jury would give to his testimony that he shot on this occasion because he feared that otherwise he would lose his life, and was therefore admissible. See *People* v. *Gray*, supra.

The trial court held that respondent could not show that deceased on one occasion held up the officials of a railroad train, even though respondent had been informed of this occurrence before he shot the deceased.

When a person is charged with murder for killing an assailant, he may show, for the purpose of proving that he believed his life in imminent peril, that deceased was a man of high temper and quarrelsome disposition, and known by him to be such. See *Hurd* v. *People*, 25 Mich., at page 418; *Brownell* v. *People*, 38 Mich. 732. He may also, for the same purpose, show specific acts of violence within his own knowledge or coming under his own observation. See *People* v. *Harris*, 95 Mich. 87 (54 N. W. 648).

But it is well settled that it is not admissible to show specific acts of violence committed by deceased upon third persons, in no wise connected with nor observed by the accused, on the ground that such matter is too remote, and, if proof were admitted, so, also, would repelling evidence, and the side issues thus raised would be as numerous as the offenses imputed to the deceased. See *Alexander* v. *Commonwealth*, 195 Pa. St. 1; *Dupree* v. *State*, 33 Ala. 380 (73 Am. Dec. 422); *McKenna* v. *People*, 18 Hun, 580; *Fitzhugh* v. *State*, 81 Tenn. 258; *State* v. *Elkins*, 63 Mo. 165; and *Thomas* v. *People*, 67 N. Y. 218.

In *People* v. *Dowd*, 127 Mich., at page 143 (86 N. W. 546), the above principle was approved by this court. An examination of the record shows that the excluded testimony in that case, as in the case at bar, was accompanied by a proposition to prove that respondent had heard of the specific act of violence under consideration. If the excluded testimony had related merely to what the respondent had heard of the occurrence in question, we should hesitate to say that it was not admissible. See *People* v.

*Harris,* supra; *Boyle* v. *State,* 105 Ind. 469 (5 N. E. 203, 55 Am. Rep. 218).   But the excluded testimony related not to the information respecting the occurrence which had reached respondent; it related to the specific act of violence itself, and, under the authority of *People* v. *Dowd,* supra, it was properly excluded.

The people swore as witnesses two physicians, whose testimony tended to prove that the wound inflicted by respondent caused Temple's death.   It is contended that this testimony was improperly admitted, because it was not made to appear that these physicians had the qualifications required by section 5280, 2 Comp. Laws.   We are bound to say that this point was not made in the court below. It is true, this testimony was objected to on the ground that it was "incompetent as the record stands;" and when the court asked, "For what reason do you claim this is incompetent at this time?" counsel replied, "Because there is nothing on this record that qualifies it and makes it competent; and it is after the fact, also."   It is scarcely necessary to say that this form of objection did not apprise the trial court of the point now insisted upon, and therefore we decline to consider it.

It is claimed that the testimony proved, or at least warranted the inference, that Temple's death was not caused by the wound inflicted upon him by respondent, but that it resulted from improper care of his attendants, and that therefore the trial court should have directed his acquittal, or at least have charged the jury that they might find him guilty of an assault with an intent to commit murder.   It is a sufficient answer to this claim to say that there was no competent evidence that Temple's death was caused by improper care.   It is true, the attending physician testified that he learned of such improper care.   But it is apparent that he learned this, not by observation, but from information.   It is scarcely necessary to say that this was hearsay testimony, and should not have been regarded.

Complaint is made of the argument of the prosecuting attorney to the jury.   We cannot say that some of the

statements contained in this argument did not go beyond the bounds of legitimate discussion, though we are not at all certain that they constitute reversible error under the circumstances of this case. We refrain from further consideration of these points, in the belief that we have said enough to furnish all proper aid for a new trial.

In charging the jury, the court said:

"The defendant has requested the court to charge you on the law of the case, and his attorneys have drawn and presented requests embodying their theory of the case, and I will read their requests now, so the jury may understand their theory."

The court then read a long request of defendant, stating his claim of the facts, and then continued:

"I charge you that this is the theory of the defendant in his defense in this case, and that you have heard the testimony along that line. I simply read these as the requests of the defendant to charge, and as their theory of the case."

The court then read many requests of defendant, most, if not all, of which contained a correct statement of the law applicable to the case. The question raised by the claim of respondent under discussion is whether the court did not commit error, to respondent's prejudice, in saying that these requests were given as *respondent's theory* of the case. If the court had merely said respondent's statement of facts respecting which the testimony was in conflict was his theory of the case, it would have been entirely proper. But the jury would naturally infer from the language of the court, and presumably did infer, that they were to consider the requests of law preferred by respondent as his theory of the case. Respondent had a right to have these requests given as the law to govern the jury in their deliberations. To say that these requests of law, which were correct and proper, were respondent's theory, naturally indicated to the jury that they were not legally bound to regard them. We must therefore hold that this statement was prejudicial to respondent.

We do not think that respondent has any occasion to complain of any other error in the record, nor that any other complaint demands discussion.

The conviction must be set aside, and a new trial ordered.

MOORE, C. J., MONTGOMERY and HOOKER, JJ., concurred. GRANT, J., did not sit.