PEOPLE v RAPIER

OPINION OF THE COURT

1. HOMICIDE—SELF-DEFENSE—EVIDENCE—PRIOR ACTS OF DECEASED.

Testimony in a murder trial where the defendant has raised the issue of self-defense relating to the deceased's prior sexual acts with the defendant's daughter and other young girls, offered to show the reasonableness of defendant's fear of the decedent and the necessity of shooting the decedent, was properly excluded where the sexual attacks were not directly connected with the homicide in that they had ceased two years before the killing took place and where the defendant was the deceased's estranged wife and neither she nor anyone else was in imminent danger of being sexually assaulted (MCLA 750.317).

2. CRIMINAL LAW—INSTRUCTIONS TO JURY—SELF-DEFENSE—WAIVER.

The deliberate failure of defense counsel in a murder trial to call to the court's attention its failure to reread a portion of the instructions to the jury on self-defense, after the jury had requested that the instructions on second-degree murder, manslaughter, and self-defense be reread to them, constitutes a waiver of any error resulting from such an omission.

CONCURRENCE BY LEVIN, J.

3. HOMICIDE—SELF-DEFENSE—EVIDENCE—PRIOR ACTS OF DECEASED.

*Exclusion in a murder trial of evidence of sexual acts of a decedent which had been offered to establish self-defense, where the acts occurred several years before the shooting, was not error even if those acts explained the intense bad feeling that led eventually to a fatal altercation between defendant and decedent where the defendant did not offer to show that the sexual acts, as distinguished from the bad feeling engendered by those acts, were a continuing source of friction between the parties because of the possibility of criminal charges*

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 40 Am Jur 2d, Homicide § 320.
[2] 53 Am Jur, Trial § 827.

*being brought against the decedent by the defendant (MCLA 750.317).*

Appeal from Kent, John T. Letts, J. Submitted Division 3 June 6, 1972, at Grand Rapids. (Docket No. 11614.) Decided October 24, 1972.

Pearline Rapier was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *James K. Miller,* Prosecuting Attorney, and *Donald A. Johnston, III,* Chief Appellate Attorney, for the people.

*Gerald M. Henry,* for defendant on appeal.

Before: R. B. Bᴜʀɴs, P. J., and Lᴇᴠɪɴ and Tᴀʀɢᴏɴsᴋɪ,* JJ.

Tᴀʀɢᴏɴsᴋɪ, J. The defendant was charged with murdering her husband in Grand Rapids, Michigan, on October 2, 1970. The court did not charge the jury on first-degree murder and the jury returned a verdict of guilty of murder in the second degree, in violation of MCLA 750.317; MSA 28.549. Defendant moved for a new trial but the motion was denied and she was sentenced to a term of 3 to 15 years in prison.

Defendant admitted shooting her husband but claimed it was in self-defense because he was going after her with a brick while she was outdoors working with her flowers when the deceased drove into her driveway. Allegedly he told her if her feet hit the sidewalk that day he was going to kill her. She went into the house and locked her door. The deceased went to the neighbor's home and stayed

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

there most of the afternoon. The defendant finally got into her car and went to get some groceries with the decedent following her, tailgating.

The defendant stopped her car on Canton Street and got out of the car. She said she heard a car door slam and out of the side of her eye saw the decedent coming after her with a brick. She pulled out a pistol and shot him. She said she thought when she shot him he would retreat, but he didn't. He kept on coming so she kept pulling the trigger.

After being advised of her *Miranda*[1] rights, the defendant waived her right to counsel and gave two detailed statements to the police and prosecutor. She was represented in the trial by the attorney who was representing her in a divorce action against the deceased, as the result of a court appointment to defend her in the instant cause. During trial, defense counsel tried to get evidence admitted that the decedent had raped the defendant's daughter and other young girls.

After the jury retired to deliberate they returned to the court room with the request that the instructions on second-degree murder, manslaughter, and self-defense be read again. This was done but the court forgot to read a substantial portion of the instructions on self-defense. The jury retired for a second time and in 40 minutes returned a verdict of guilty of murder in the second degree.

The defendant raises four issues on appeal which we will consider in turn, although it is our opinion that the first issue is the only one of any significance to the jurisprudence of this state. However, because this is a capital offense we feel that the other issues should be disposed of in spite of this conclusion.

---

[1] *Miranda v Arizona*, 384 US 436; 16 L Ed 2d 694; 86 S Ct 1602 (1966).

I. *Did the exclusion of the defendant's testimony of*
*acts and occurrences prior to the homicide, as*
*bearing on provocation, her fear and appre-*
*hension, and the likelihood of who was the*
*aggressor, amount to an abuse of discretion?*

Defendant claims that it was reversible error to
prohibit her testimony that the deceased had
raped her daughter, her niece, and two other girls.
She claims this explained her motivation through-
out the transaction in seeking a divorce and in
fearing the decedent when confronted by him with
an upraised brick. She argues that it was admissi-
ble both as to her state of mind and also as
bearing on the probability that the deceased was
the aggressor.

Upon a pre-trial motion, a separate record was
made of the testimony of the defendant's daughter.
The testimony was specific and unequivocal. The
court refused to admit the testimony at that time
but said that it might be admissible after the
defendant testified.

During the trial the court refused to allow a
separate record of the testimony of a young
woman who as a child had lived with the defend-
ant and her deceased husband. The court relied on
*People v Cellura,* 288 Mich 54 (1939), *People v*
*Farrell,* 137 Mich 127 (1904), and *People v Stall-*
*worth,* 364 Mich 528 (1961), for its holding that
such testimony would be inadmissible.

The defendant later took the stand and after
three preliminary questions the prosecution, out of
the presence of the jury, moved to have the de-
fendant instructed by the court that she was not to
testify about "specific acts".

Defense counsel argued against the motion as
follows:

"*Mr. Henry:* Well, I hear, your Honor, that defense of her child is self-defense to the mother, and I feel that these are not separate, specific acts isolated from this defendant, and occurring at different times. The acts charged against the daughter and alleged by Mrs. Rapier as ground for divorce, occurred under her own roof, to her own daughter, while she was working, and the type of outrage that certainly would make divorce well grounded, and I think the crucial point is whether these acts contributed to her fear of this man, and the reasonableness of her feeling it was necessary to shoot him in order to save her own life."

The court's response was in the following language:

"*The Court:* Now you are talking about two different things. You are talking about her shooting to save her own life. You are also talking about her actions regarding her daughter. There is no doubt about that you can talk about shooting to save her own life. But then when you bring in these other side issues, you are getting into violence which occurred to a third party and you are relating that to her concern for this violence. And I agree with you that as far as the court is concerned it could see why such should come in. But the Supreme Court has ruled that it is inadmissible, acts of violence toward other persons, or other acts of violence that took place."

For the record, defendant's attorney offered testimony of the daughter, the young lady who was formerly a roomer with the Rapiers, and two other young ladies regarding sexual abuse by the deceased. The testimony of these witnesses was not allowed. The court did, however, allow some of the documents from the circuit court divorce file to be read to the jury. However, references to the alleged sexual attacks were deleted.

Later in the course of the trial the court permitted an affidavit of the defendant making reference

to carnal abuse of her daughter to be read to the jury on the basis that the prosecution had opened the door by a question whether the defendant had contacted the judge on the divorce case regarding the deceased bothering her. The pertinent portion of the Court's opinion in *People v Farrell, supra,* follows:

"The trial court held that respondent could not show that deceased on one occasion held up the officials of a railroad train, even though respondent had been informed of this occurrence before he shot the deceased.

"When a person is charged with murder for killing an assailant, he may show, for the purpose of proving that he believed his life in imminent peril, that deceased was a man of high temper and quarrelsome disposition, and known by him to be such. [Citations omitted.] He may also, for the same purpose, show specific acts of violence within his own knowledge or coming under his own observation. [Citation omitted.]

"But it is well settled that it is not admissible to show specific acts of violence committed by deceased upon third persons, *in no wise connected with* nor observed by the accused, on the ground that such matter is too remote, and, if proof were admitted, so, also, would repelling evidence, and the side issues thus raised would be as numerous as the offenses imputed to the deceased. [Citations omitted.]

"In *People v Dowd,* 127 Mich [140 (1901)], at page 143 (86 NW 546), the above principle was approved by this Court. An examination of the record shows that the excluded testimony in that case, as in the case at bar, was accompanied by a proposition to prove that respondent had heard of the specific act of violence under consideration. If the excluded testimony had related merely to what the respondent had heard of the occurrence in question, we should hesitate to say that it was not admissible. [Citations omitted.] But the excluded testimony related not to the information respecting the occurrence which had reached repondent; it related to the specific act of violence itself, and, under the author-

ity of *People v Dowd,* supra, it was properly excluded."
(pp 130–131; emphasis added.)

The Court in *People v Cellura, supra,* stated:

"Defendant argues that it was reversible error for the
court to refuse to permit evidence of other specific acts
of violence on the part of deceased as bearing upon his
violent character. Proof of the violent and turbulent
character of deceased is admissible in homicide cases
where there is an issue of self-defense, as bearing upon
whether the deceased was likely to be the aggressor in
such an encounter. Proof of specific acts is not, however,
admissible as evidence of violent character in such a
case. Evidence of the character of deceased must be
confined to his general reputation, and evidence of
particular acts of violence or lawlessness is not admissi-
ble unless they were directly connected with and in-
volved in the homicide." (p 64; emphasis added.)

The trial court did not think that the deceased's
sexual attacks were sufficiently connected with the
homicide to be admissible under *Cellura.* The kill-
ing did not occur at the home nor in the presence
of the children. The attacks on the daughter had
ceased about two years before although the defend-
ant did not find out about them until later. It was
the court's decision that at the time the deceased
was killed the daughter was in no danger, and so
the allegations of previous sexual attacks on her
were not directly connected with the homicide.

Defense counsel argued that the rapes were
admissible as affecting the reasonableness of the
defendant's fear of the deceased and the necessity
of shooting him. If the deceased's specific acts of
violence on third persons involved beatings or
threats with weapons, they would probably be
admissible as showing the aggressive nature of the
deceased, and if known to the defendant, as show-
ing the likelihood of her being afraid of the de-

ceased. *People v Harris,* 95 Mich 87 (1893). The fact that the specific acts alleged were rape of young girls makes their admissibility quite doubtful in this case where the defendant was the deceased's estranged wife and neither she nor anyone else was in imminent danger of being sexually assaulted.

The trial court also cited *People v Stallworth, supra,* as a basis for its ruling. However, in that case it was held that rejection of character testimony bearing on the general reputation for violence of the deceased was reversible error. That holding is not relevant to this case as the trial court admitted character testimony during trial. Accordingly, we conclude that the trial court properly excluded testimony relating to the deceased's alleged sexual acts with the defendant's daughter and others.

## II. *Should a new trial have been granted on the basis of insufficient instructions on self-defense?*

Defendant's attorney cites no authority for his claim that it was reversible error for the court to accept the jury verdict without rereading the portion of the instructions on self-defense which the court had previously overlooked. In his motion for new trial, defense counsel stated that he noted the court's oversight in rereading its instructions by ommission of a final page as to self-defense which had previously been given. His affidavit in support of the motion for new trial states that such oversight was noted when the jury was filing out to resume its deliberations at approximately 2:15 but he did not call this to the court's attention until approximately the time at which the jury had signaled that it had reached a verdict.

It would thus appear that defense counsel made a deliberate choice in failing to call the oversight to the court's attention in timely fashion. While this is a close question as to whether defendant was innocent because she killed in self-defense or whether she was guilty because she didn't retreat or killed while no longer in danger, we feel that in light of the defense counsel's affidavit we must rule that this was not reversible error but rather a deliberate and conscious choice on the part of the defendant not to call the mistake in rereading the instructions on self-defense to the court's attention. Thus, we hold that this error, if any, has been waived.

### III. *Were the instructions on malice materially prejudicial to the defendant?*

The trial court instructed specifically as follows:

"Now, where death has been shown to result from using a deadly weapon, in the absence of proof to the contrary malice is presumed."

After such instructions were given, the court inquired if the attorneys had any exceptions. The prosecution objected because the court did not charge on first-degree murder. Defense counsel stated he had no objections, although he had previously made objection when the proposed instructions were being discussed in chambers.

He now claims that the court's instructions on malice were materially prejudicial to the defendant because there was evidence that the defendant was carrying the gun out of fear of the deceased.

The language of the charge is substantially that recommended in 2 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 906, Form No 309, p

1229, citing *People v Collins,* 166 Mich 4 (1911). A
claim of self-defense was also involved in the
*Collins* case. It appears that the court did not err
in its instructions on malice. We make this finding
on this issue even though defense counsel's con-
duct in the trial court appears to indicate a waiver
of this claim.

### IV. *Was there a miscarriage of justice?*

Defense counsel here makes a claim of miscar-
riage of justice. This argument is almost com-
pletely a rehash of the questions raised under
Issue I and does not require additional discussion.

Affirmed.

R. B. Burns, P. J., concurred.

Levin, J. *(concurring).* I concur in Judge Tar-
gonski's opinion with the following additional
comment concerning the issue dealt with in Part I
of his opinion.

The defendant, Pearline Rapier, does not claim
that her estranged husband's alleged sexual exploi-
tation of young girls created a justifiable fear on
her part that he might commit a sexual assault on
her. She argues, rather, that she should have been
allowed to prove the sexual acts for the purpose of
establishing the nature of the dispute between her
and her husband, that her husband had a motive
to threaten to kill her and to carry out that
threat, and that, therefore, she was justifiably
fearful of him.

If the defendant had apprised the trial judge not
only of the evidence of the sexual acts, but had
also made him—as she has us—aware that before
the shooting she had brought to the prosecutor's
attention, *and* that her husband was fearful she

might in the future continue to press, charges which could bring about his conviction of a crime, statutory rape, punishable by a sentence of life or any term of years, the evidence would, in my opinion, have been admissible. She did not, however, contend at the trial that the sexual acts, which had occurred several years before the shooting, might motivate her husband to harm her now out of fear of criminal prosecution for those acts.

I agree with my colleagues that the judge was not obliged to admit the evidence on other grounds. Evidence that a man has taken sexual advantage of young girls would not tend to establish that he is justifiably to be feared as a man who might commit an act of violence on an adult.

In ruling on the admissibility of evidence a judge may properly exclude evidence of limited relevancy of a kind likely to cast more heat than light on the issues in the case. Compare *People v Hall,* 19 Mich App 95 (1969); "But relevance is not always enough. There may remain the question, is its value worth what it costs?" McCormick, Law of Evidence, § 152, p 319.

The judge did not reversibly err in excluding the evidence of the sexual acts, which occurred several years before the shooting, even if those acts explained the intense bad feeling that led eventually to the fatal altercation since the defendant did not offer to show that the sexual acts, as distinguished from the bad feeling engendered by those acts, were a continuing source of friction between the parties.