PEOPLE v VAN EPPS

1. CRIMINAL LAW—CONFESSIONS—ADMISSIBILITY—VOLUNTARINESS—
   APPEAL AND ERROR.

   The sole purpose of a hearing regarding the admissibility of a
   confession is to determine the fact of voluntariness of state-
   ments of a person accused of crime and a reviewing court is
   concerned only with the correctness of that determination; a
   reviewing court is required to examine the entire record and
   make an independent determination of the ultimate issue of
   voluntariness; if after such a review the reviewing court does
   not possess a definite and firm conviction that a mistake was
   committed by the trial judge in his ruling, it should affirm that
   ruling.

2. HOMICIDE—MURDER—EVIDENCE—ADMISSIBILITY OF EVIDENCE—PSY-
   CHIATRIC RECORDS—INSANITY—DEFENSE OF INSANITY.

   A court properly excluded from evidence in a murder trial the
   psychiatric records of a defendant who maintained that he
   killed the deceased in self-defense and sought to introduce his
   own psychiatric records to show what his state of mind was at
   the time of the offense where the defendant did not interpose
   the defense of insanity or argue diminished capacity, and
   where the records were those of his hospitalization over two
   years prior to the date of the offense, and no claim was made or
   testimony offered to establish that at the time of the offense the
   defendant was suffering from the same delusions he suffered
   from at the time of his admission to the hospital.

REFERENCES FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 523–596.
[2, 3] 40 Am Jur 2d, Homicide §§ 291–294.
[4, 6] 30 Am Jur 2d, Evidence § 1022.
   75 Am Jur 2d, Trial §§ 166, 167, 708.
[5] 75 Am Jur 2d, Trial §§ 40, 41.
   76 Am Jur 2d, Trial § 1105.
   Manifestations of grief, crying, and the like by victim or family of
   victim during criminal trial as ground for reversal, new trial, or
   mistrial. 46 ALR2d 949.
[7–9] 40 Am Jur 2d, Homicide §§ 2, 44, 549.

3. Homicide—Self-Defense—Evidence—Character of Deceased—General Reputation—Specific Acts—Violent Character.'

Proof of the violent and turbulent character of the deceased victim is admissible in homicide cases where there is an issue of self-defense, as bearing upon whether the deceased was likely to be the aggressor in such an encounter, but evidence of the character of the deceased must be confined to his general reputation, and proof of specific acts is not admissible as evidence of violent character in such a case unless the specific acts were directly connected with and involved in the homicide.

4. Criminal Law—Fair Trial—Spectator Comment—Removal of Spectator—Instructions to Jury—Curative Instructions.

A defendant was not prejudiced by an objectionable statement blurted out by a spectator, defendant's wife, during defense counsel's closing argument, where immediately after the statement defendant's wife was removed from the courtroom and the jury instructed to disregard such disruptions and not to consider anything except that which was testified to from the witness stand, and the court's curative instruction made unnecessary a polling of the jury to determine the effect the outburst had on them.

5. Statutes—Spousal Immunity Statute—Husband and Wife—Criminal Law—Witnesses.

An outburst by a defendant's wife did not violate the defendant's rights under the spousal immunity statute, where the wife made the outburst while a spectator in the courtroom and not while she was being examined as a witness (MCLA 600.2162).

6. Criminal Law—Prosecutors—Witnesses—Improper Questioning of Witnesses—Closing Argument—Improper Remarks—Objections—Failure to Object—Appeal and Error.

A criminal defendant's failure to object to the prosecutor's alleged improper questioning of witnesses and allegedly improper remarks during closing argument precludes appellate review where an objection and the appropriate curative instruction could have eliminated any prejudice to the defendant.

7. Homicide—Second-Degree Murder—Sentencing—Discretion.

A judge is empowered to impose a prison term of life or any number of years, in his discretion, for the crime of second-degree murder (MCLA 750.317).

8. Criminal Law—Sentencing—Purpose of Sentencing—Deterrence.

Deterrence is one of the underlying purposes to be served by sentencing in our criminal justice system.

9. CRIMINAL LAW—SENTENCING—STATUTORY LIMITS—CONSIDERATION
—APPEAL AND ERROR.

A sentence which is within the statutory limits and not based on
any impermissible considerations will not be disturbed on
appeal.

Appeal from Jackson, Charles J. Falahee, J.
Submitted Division 1 November 12, 1974, at Lansing. (Docket No. 17344.) Decided March 10, 1975.

Robert E. Van Epps was convicted of second-degree murder. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Bruce A. Barton,* Prosecuting Attorney, and *James M. Justin,* Assistant Prosecuting Attorney, for the people.

*John B. Phelps,* Assistant State Appellate Defender, for defendant.

Before: BRONSON, P. J., and D. E. HOLBROOK and
V. J. BRENNAN, JJ.

V. J. BRENNAN, J. Defendant, Robert Van Epps, was convicted by a jury in Jackson County Circuit Court of second-degree murder, MCLA 750.317; MSA 28.549, and sentenced to a term of from 10 to 20 years in prison. He now appeals, presenting several issues for our consideration. We affirm.

The deceased, Peter Cochrane, was shot by defendant outside of a bar located in Jackson, Michigan. After the shooting occurred, defendant drove to his brother's house in Parma and then decided to turn himself in to the police. While at the police station defendant was interrogated and made a statement to the police, a portion of which was admitted into evidence at trial. On this appeal defendant argues that the statement should not have been allowed into evidence because he was not advised of his *Miranda* rights the minute he

appeared at the police station and because the statement was not voluntarily made. With respect to this last claim defendant asserts that the interrogation took place after defendant had indicated that he desired to have an attorney present.

On January 22, 1973 a *Walker* hearing was held to determine the voluntariness of the statement. The trial judge, after hearing testimony by defendant, his brother, his brother's wife, and two police officers, rendered an opinion on February 6, 1973 finding that the statement was freely and voluntarily made and that it was made after defendant was advised of his *Miranda* rights and before he requested an attorney. He ordered part of the statement suppressed, however, because it involved interrogation which occurred after defendant indicated that he no longer wished to answer any questions.

The role of an appellate court in reviewing such a determination was recently expressed by our Supreme Court in *People v McGillen #1,* 392 Mich 251, 257; 220 NW2d 677, 679 (1974):

"As this Court stated in *People v Robinson,* 386 Mich 551, 557; 194 NW2d 709 (1972), 'the sole purpose of the *Walker* hearing is to determine the fact of voluntariness and a reviewing court is concerned only with the correctness of that determination. * * * "On this appeal we are required to 'examine the whole record and make an independent determination of the ultimate issue of voluntariness' " '.

"If after such a review we do not possess a definite and firm conviction that a mistake was committed by the trial judge in his ruling, we will affirm that ruling. *People v Hummel,* 19 Mich App 266; 172 NW2d 550 (1969)."

In the case at bar we have reviewed the entire record and find that the trial judge was correct in

his determination. The statement of defendant which was introduced at trial was a transcribed copy of defendant's interrogation the night he presented himself at the police station. This transcript, which was made from a tape recording of the interrogation process, clearly shows that before any substantive questioning occurred defendant was fully advised of his *Miranda* rights and that he chose to waive them. Defendant does not challenge what appears on the transcript, but, rather, asserts that prior to the initiation of the interrogation process he stated his desire to have an attorney present during any questioning and that, after being informed that the attorney was not available, the questioning began. This same claim was asserted during the *Walker* hearing and the trial judge, after listening to the witnesses on both sides testify as to what occurred at the station house found that defendant did not request an attorney until after the statement was given. We have reviewed the entire record in this regard and find that we, like the trial judge, are forced to choose between two totally conflicting stories. Unlike the situation in *McGillen,* however, the testimony by the police officers in this case appears to be forthright and consistent. The defendant, on the other hand, expressed some confusion as to some of the events which occurred that night. Since we are not left with the "definite and firm conviction that a mistake was committed by the trial judge in his ruling", we affirm his decision in this regard.

We also find without merit defendant's claim that his conviction must be reversed because he was not given his *Miranda* warnings immediately upon entering the station house. The statement which was admitted at trial was made *after* defendant was fully advised of his rights and chose

to waive them. That the waiver was valid is manifest from the record. The statement, therefore, was properly admitted. We find no error.

Defendant next contends that the examining magistrate erred in binding him over on the charged offense. We disagree. Sufficient evidence was presented at the preliminary examination to warrant binding defendant over for trial.

Defendant next claims that the trial court erred in excluding from evidence the psychiatric records of the deceased and the defendant and by excluding the testimony of the psychiatrist who treated the deceased. Defendant's defense at trial was that he killed the deceased in self-defense. In support of his claim in this regard the defendant sought to introduce his own psychiatric records to show what his state of mind was at the time of the offense. Defendant did not interpose the defense of insanity and his attorney explicitly stated at trial that they were not arguing diminished capacity. See *People v Lynch,* 47 Mich App 8; 208 NW2d 656 (1973), *lv den,* 390 Mich 777 (1973). Rather, the records were offered to show how defendant perceived the situation as it unfolded before him. The records, though, were those of his hospitalization over two years prior to the date of this incident. No claim was made and no testimony was presented to establish that defendant was still operating under the same delusions as he was at the time of his admission to the hospital. Under these circumstances we find no error.

The trial judge excluded the deceased's psychiatric records from evidence on the grounds of physician-patient privilege (MCLA 600.2157; MSA 27A.2157). Defendant argues that the trial judge erred in excluding the records on this basis because the purpose of the statute can no longer be

served, since the person to whom the privilege belongs is dead. Defendant further argues that MCLA 600.2157; MSA 27A.2157 should not be mechanically applied so as to preclude consideration of evidence relevant to defendant's defense. Under the facts of this case we find it unnecessary to decide whether the physician-patient privilege was properly asserted, see *People v Sam Williams,* 39 Mich App 91; 197 NW2d 336 (1972), since the evidence sought to be introduced was otherwise inadmissible for the purpose for which it was offered.

Defendant sought to introduce the deceased's psychiatric records to show that the deceased was disposed towards violence. The records support such an assertion only insofar as they indicate that the deceased once attempted to kill himself with a gun. The rule governing the admissibility of such evidence was stated by our Supreme Court in *People v Cellura,* 288 Mich 54, 64; 284 NW 643, 647 (1939):

"Defendant argues that it was reversible error for the court to refuse to permit evidence of other specific acts of violence on the part of deceased as bearing upon his violent character. Proof of the violent and turbulent character of deceased is admissible in homicide cases where there is an issue of self-defense, as bearing upon whether the deceased was likely to be the aggressor in such an encounter. Proof of specific acts is not, however, admissible as evidence of violent character in such a case. Evidence of the character of deceased must be confined to his general reputation, and evidence of particular acts of violence or lawlessness is not admissible unless they were directly connected with and involved in the homicide." See also *People v Mitten,* 44 Mich App 64; 205 NW2d 47 (1972); *People v Rapier,* 43 Mich App 297; 204 NW2d 339 (1972).

Since the instance of violence contained in the deceased's psychiatric records was not "directly connected with and involved in the homicide" the evidence was not admissible.

Similarly, no reversible error occurred by excluding the testimony of the psychiatrist who attended the deceased. A separate record of his testimony was made at the behest of defendant's attorney. It clearly appears from this record that the doctor's testimony simply would not have supported the position for which it was offered. The doctor stated that the deceased was not homicidal and that even if provoked he believed the deceased would control himself and not kill another human being. The doctor's testimony also would have placed in serious question whether the deceased ever attempted to kill himself as was stated he had done. Under these circumstances we find no error.

Defendant also argues that his conviction must be reversed because his cause was severely prejudiced in the minds of the jurors by a statement blurted out by one of the spectators, his wife, during defense counsel's closing argument. Immediately after the objectionable statement was made, however, defendant's wife was removed from the courtroom and the jury instructed to disregard such disruptions and not to consider anything except that which was testified to from the witness stand. Under these circumstances we find no reversible error. See *People v Broom,* 50 Mich App 337; 213 NW2d 247 (1973). We are unpersuaded by defendant's argument that the outburst by defendant's wife violated his rights under the spousal immunity statute, MCLA 600.2162; MSA 27A.2162. The wife here was not, in the words of the statute, "examined as a wit-

ness". Similarly, we find no merit to defendant's contention that the trial judge committed reversible error by not polling the jury to determine the effect the outburst had on them. The trial judge's curative instruction was more than adequate in this regard.

Defendant next argues that his conviction must be reversed because of prosecutorial misconduct. In support of his claim in this regard defendant refers us to several allegedly improper statements made during the prosecutor's closing argument and also to instances of allegedly improper questioning. We have reviewed each of the instances complained of and find ourselves unable to say that reversible error here occurred. Some of the comments relied on were not objected to at trial. We, therefore, are precluded from considering them on this appeal. *People v McLendon,* 51 Mich App 543; 215 NW2d 742 (1974). With respect to the remaining instances of allegedly improper conduct, the trial judge, after objection was made, properly employed an appropriate curative instruction in every instance in which one was warranted, thereby eliminating any prejudice to defendant. With respect to the questioning of defendant about the manner in which he obtained his gun we believe the alleged error falls within the rule stated in *People v Wood,* 44 Mich App 99; 205 NW2d 66 (1972), *lv den,* 390 Mich 758 (1973), and did not constitute error.

Defendant also argues that he is entitled to be resentenced because the sentence he received was not an individualized sentence, since it was imposed primarily to serve as a deterrent to others. We find no merit to this contention. Before the trial judge pronounced sentence he fully explained the factors he considered in determining defend-

ant's sentence. The trial judge's statement shows that the purpose of the sentence was to serve as a deterrent to others, and it also shows that the trial judge recognized defendant's own culpability in taking the law into his own hands and killing another person.

A trial judge, in his discretion, is empowered to impose a prison term of life or any number of years for the crime of second-degree murder. MCLA 750.317; MSA 28.549. The sentence imposed here is well within these limitations and constituted a proper sentence. The record amply demonstrates that the sentence was not imposed solely to deter others. Punishment also clearly played a role. The trial judge specifically stated that he believed the proofs justified the jury's verdict and advised the defendant to put all his vengeance behind him. The trial judge did state, though, that the sentence was to serve mostly as a deterrent to others. This is not an impermissible consideration. Deterrence is one of the underlying purposes to be served by sentencing in our criminal justice system. Rehabilitation is not the only criterion to be used in determining the punishment to be meted out to a particular offender. *People v Shively,* 45 Mich App 658; 206 NW2d 808 (1973). The sentence here being within the statutory limits and not based on any impermissible considerations we are not about to disturb it on this appeal.

The final issue which defendant has presented for our consideration was decided adversely to his position in the recent case of *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974). We find no error.

Affirmed.