PEOPLE v GONZALES

Docket No. 77-1557. Submitted June 6, 1978, at Grand Rapids.—
Decided October 2, 1978. Leave to appeal applied for.

Carlos Gonzales was convicted in a bench trial of delivery of
heroin and conspiracy to deliver heroin, Bay Circuit Court,
John X. Theiler, J. Defendant appeals, raising several allega-
tions of error. *Held:*

1. The trial court's mistaken interpretation of the *mens rea*
requirement for aiding and abetting, which was relied on as an
alternative theory of liability on the delivery charge, was not
reversible error because the defendant was specifically found
guilty both as a principal and as an accomplice and it is certain
that the judgment was based on a valid alternative.

2. The defendant's convictions of both delivery and conspir-
acy to deliver based on a single act of delivery do not constitute
double jeopardy.

3. It will not be presumed that the trial court in a bench trial
considered evidence that failed to meet the court's own condi-
tions for admissibility of evidence.

4. Defendant's allegation that the evidence was insufficient to
show that he knew the substance he delivered was heroin or
that he agreed with anyone to deliver it is not persuasive. The
record provides ample support for the court's findings of guilt.

5. The judge considered the proper factors in sentencing the
defendant, and did not abuse his discretion in setting the
sentence. The Court of Appeals may not stray from the case
before it and review in general the sentencing policy of the
entire circuit court.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 123.

[2] 21 Am Jur 2d, Criminal Law § 182 *et seq.*

[3] 5 Am Jur 2d, Appeal and Error § 839 *et seq.*

[4, 5] 30 Am Jur 2d, Evidence §§ 1091, 1125, 1170–1172.

[5] 5 Am Jur 2d, Appeal and Error §§ 820, 821, 883.

[6] 21 Am Jur 2d, Criminal Law § 576 *et seq.*

[7] 4 Am Jur 2d, Appeal and Error § 17.

1. CRIMINAL LAW—AIDING AND ABETTING—MENS REA—BENCH TRIAL
—SPECIFIC FINDING OF GUILT.

A trial court's mistaken interpretation of the *mens rea* require-
ment for aiding and abetting, which was relied on as an
alternative theory of liability on a charge of delivery of heroin,
is not reversible error where the court, in a bench trial,
specifically found the defendant guilty both as a principal and
as an accomplice.

2. CRIMINAL LAW—CONSPIRACY—OBJECT OF CONSPIRACY—DOUBLE
JEOPARDY.

Conspiracy to commit a crime and the crime which is the object
of the conspiracy are distinct offenses, and a defendant's convic-
tions of conspiracy to deliver heroin and of delivery of heroin,
both arising from a single act of delivery, do not constitute
double jeopardy.

3. APPEAL AND ERROR—CRIMINAL LAW—EVIDENCE—ADMISSIBILITY.

The Court of Appeals will not presume that a trial court, sitting
without a jury, considered evidence that failed to meet the
court's own conditions for admissibility of evidence.

4. CRIMINAL LAW—BURDEN OF PROOF—CIRCUMSTANTIAL EVIDENCE.

The prosecution must prove at trial all elements of the offense
charged beyond a reasonable doubt; when the people's case is
based on circumstantial evidence, the prosecution must negate
every reasonable theory consistent with the defendant's inno-
cence of the crime charged.

5. CRIMINAL LAW—QUESTIONS OF FACT—APPEAL AND ERROR—SCOPE
OF REVIEW.

The prosecution's proof of its case beyond a reasonable doubt and
whether there are any inferences of guilt from circumstantial
evidence which follow as a certainty are questions for the trier
of fact; upon review of a conviction, the Court of Appeals is
limited to a determination of whether there was evidence to
sustain the charge made against the defendant.

6. CRIMINAL LAW—SENTENCING—FACTORS CONSIDERED.

Factors to be considered in determining an appropriate sentence
for a criminal defendant include (1) the reformation of the
offender, (2) the protection of society, (3) the disciplining of the
offender, and (4) the deterrence of others from committing like
offenses.

7. Appeal and Error—Criminal Law—Sentencing.

The Court of Appeals may not stray from review of the case before it to review in general the sentencing policy of an entire circuit court.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Eugene C. Penzian,* Prosecuting Attorney, and *Nancy L. Goodale,* Assistant Prosecuting Attorney, for the people.

*Janet Tooley,* Assistant State Appellate Defender, for defendant on appeal.

Before: Danhof, C.J., and V.J. Brennan and R.H. Campbell,* JJ.

Danhof, C.J. Defendant was convicted after a bench trial of delivery of heroin under MCL 335.341(1)(a); MSA 18.1070(41)(1)(a) and conspiracy to deliver heroin under MCL 750.157a(a); MSA 28.354(1)(a). He was sentenced to two concurrent 5 to 20 year terms and appeals as of right.

On March 16, 1976, narcotics undercover officer Clifford DeFeyter, with police informant Tom Cadieux, visited the Bay City home of Raymond Barrientes, from whom Cadieux had bought heroin before. There with Raymond Barrientes were his brothers, Rudy and Joe, and the defendant. Officer DeFeyter discussed a heroin transaction with Raymond Barrientes in the living room of the Barrientes home, while defendant sat in an adjacent dining room through an open archway some 15 to 20 feet away. After an agreement had been reached as to price and quantity, Raymond Barrientes instructed Officer DeFeyter to place his money on a shelf in the living room and to go to an alley behind the house where he could pick up

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the dope and where someone would meet him. DeFeyter put $350 on the shelf and walked out of the house with Cadieux. As he approached his car, he saw defendant exit the Barrientes home with Joe and Rudy. Fearing at that point he would lose his money without obtaining the drugs, DeFeyter sought to call off the deal. Joe and Raymond reassured him the deal would be carried out as planned. Raymond pointed to the car in which defendant and Rudy were sitting and said, "They got the dope". For insurance, Joe agreed to ride with DeFeyter. DeFeyter drove to the back alley where defendant's car was standing and pulled along side. Defendant rolled down his window. DeFeyter walked to defendant's car. Defendant had a metal foil package in his hand in his lap which he handed to DeFeyter. DeFeyter told defendant to stay there while he checked the package. After DeFeyter okayed the contents, Joe returned to defendant's car and defendant drove off.

Because the investigation into drug traffic was continuing, defendant was not arrested immediately. Officers executed a warrant for his arrest the next month during a raid on another home where drugs were being sold.

To the foregoing statement of facts defendant would add that the conversation between DeFeyter and Raymond Barrientes while defendant was sitting in the dining room was in a low tone, at the time others may have been conversing in the dining room, and a record player may have been on. The state would also point out that defendant was within hearing distance of two other conversations which may have been relevant to defendant's state of mind: one in the house between Joe Barrientes and DeFeyter, wherein Joe asked whether defendant was "coping dope" and how bad his

"jones" was, and a second outside when Joe reassured DeFeyter that "everything is cool. * * * What's the matter? * * * Let's go back in the house and talk to Raymond * * * ". Evidence of the discussion between Joe and DeFeyter in the Barrientes home was received over defendant's hearsay objection, but the trial judge doubted its relevancy.

# I

On appeal defendant alleges five errors by the trial judge. Three of his arguments can be dismissed summarily.

First, defendant contends his conviction should be reversed because the trial judge misconstrued the mens rea requirement for aiding and abetting, which the trial judge relied on as an alternative theory of liability on the delivery charge. Any error in the trial judge's instructions on this point is nonreversible since he specifically found defendant guilty, both as a principal and as an accomplice. Unlike in the situation presented by a general jury verdict, see *e.g., People v Gilbert,* 55 Mich App 168; 222 NW2d 305 (1974), we "can say for sure" that the judgment was based on a valid alternative.

Second, defendant claims his convictions for conspiracy to deliver heroin and delivery were inferred from his single act of delivery and, therefore, constitute double punishment. A simple answer is that the double jeopardy clause does not forbid two inferences from the same evidence; it is a rule against double punishment for single acts and double prosecutions for separate acts done in a single transaction. There is ample authority that conspiracy and the crime which is the object of the conspiracy are distinct offenses. *People v Tinskey,*

394 Mich 108; 228 NW2d 782 (1975), *People v
Ormsby,* 310 Mich 291; 17 NW2d 187 (1945). Even
under a transactional approach to double punish-
ment, *cf., People v White,* 390 Mich 245; 212
NW2d 222 (1973), which we do not now adopt, it
cannot be said that a prior agreement with a third
person to deliver heroin is incidental to any deliv-
ery of heroin. Finally, on the facts of this case, the
inference of an agreement to deliver is supported
by more than the delivery itself. It is supported as
well by testimony that the seller told Officer De-
Feyter to pick up his dope in an alley behind the
seller's home where someone would meet him, that
defendant drove there and handed over the heroin.

Third, defendant claims it was error to admit
prejudicial testimony about the circumstances of
defendant's arrest several weeks after the present
offense, during an unrelated drug raid. The trial
judge properly admitted this evidence on the con-
dition that the state connect it up with the present
transaction. See 8A Michigan Law & Practice,
Criminal Law, § 451, p 99. The state failed to
comply. If the case had been tried before a jury, it
would have been the court's duty to strike that
evidence, *id.* p 100, and our duty to determine
whether its failure to strike constituted reversible
error. In reviewing a bench trial, however, we will
not presume that the court considered evidence
that failed to meet the court's own conditions for
admissibility. Nothing in the record affirmatively
shows that evidence of the circumstances sur-
rounding defendant's arrest affected the court's
findings.

## II

The more discussable issues raised by this ap-
peal concern the sufficiency of evidence to support

the conspiracy and delivery convictions and the factors that determined defendant's sentence.

A. Defendant specifically objects that there was insufficient evidence that he knew the substance he delivered was heroin and that he agreed with anyone to deliver it. He argues that the prosecutor failed to negate all theories of innocence, including the plausible theory that defendant was an innocent conduit for the delivery of heroin. Further, he maintains that the inferences of knowledge and agreement were impermissibly based on other inferences, namely, the inference that he overheard the negotiations between Raymond Barrientes and Officer DeFeyter and the inference that either defendant or Rudy intended to deliver the heroin.

At trial the prosecution must prove all elements of the offense beyond a reasonable doubt. That proof may be circumstantial, but when "the people's case is based on circumstantial evidence, the prosecution must negate every reasonable theory consistent with the defendant's innocence of the crime charged". *People v Davenport,* 39 Mich App 252, 257–258; 197 NW2d 521, 523 (1972).

Whether the state has proved its case beyond a reasonable doubt and whether the inferences of guilt from its circumstantial evidence follow as an "impelling certainty" are questions for the trier of fact. *People v Howard,* 50 Mich 239; 15 NW 101 (1883), *People v Fuller,* 395 Mich 451; 236 NW2d 58 (1975). Our role in the fact-finding process is limited:

"As to whether the evidence introduced was sufficient to sustain the charge made, we need but say that, if there was evidence tending to sustain the charge made in either of the counts, then this Court will not attempt to weigh the same and say whether the jury ought or not to have considered it sufficient. In testing this case

we are not required to take that which respondent relies upon and that which would tend against him, and from a comparison thereof determine which was the stronger and better, or, deducting the one from the other, say what, if anything, was left. This would be but a weighing of the evidence and was entirely within the province of the jury. Nor are we to take the evidence in the order, question and answer, in which it was given, but finding it where we may, and putting what was most favorable to the prosecution together, and discarding all other, can this Court say it fairly tended to establish the charge made? If so, then the verdict of the jury in this Court must be considered as final. If, however, we find a total want of evidence upon any essential point, then it becomes a clear duty to sustain the exceptions taken." *People v Howard, supra,* at 242–243; 15 NW at 101–102, quoted with approval in *People v Palmer,* 392 Mich 370, 376; 220 NW2d 393 (1974), and most recently reaffirmed by *People v Dupie,* 395 Mich 483; 236 NW2d 494 (1975).

Bearing on defendant's knowledge about the substance he delivered in the instant case was testimony that he was in a position to overhear the drug deal between Raymond Barrientes and Officer DeFeyter, that he had been seen at the Barrientes home before, that the heroin was delivered in a foil package, and that heroin is usually delivered in a foil package. Also in evidence was testimony, not challenged on appeal, that defendant was in a position to overhear two other conversations between Joe Barrientes and Officer De-Feyter which circumstantially referred to the drug deal. In support of the court's finding of an agreement was the foregoing plus testimony that defendant delivered the heroin in accord with the plan told by Raymond Barrientes to DeFeyter. Finally, in evidence were all reasonable inferences that could be drawn from this testimony.

Thus, the record provides some support for the

court's findings. Given our limited role in the factfinding process, we find that it provides "ample" support. Accord, *People v Palmer, supra.* To the extent that the "no inference on an inference rule" in any way increases our role in the factfinding process, see *People v Atley,* 392 Mich 298; 220 NW2d 465 (1974), but see *People v Orsie,* 83 Mich App 42; 268 NW2d 278 (1978), we find it inapplicable. The inferences of knowledge and agreement fairly and closely followed from the direct evidence as well as from other inferences.

B. Defendant lastly complains that he was illegally sentenced according to a county program of mandatory and stiff prison sentences for heroin dealers. By failing to consider his personal qualifications for probation or a lighter sentence, he reasons, the court violated the spirit of our state's indeterminate sentencing laws and the constitutional separation of powers. To factually support his claim, he relies on sentencing transcripts from two cases tried in Saginaw County which evidence the policy there. He also cites portions of three sentencing transcripts from cases tried in Bay County, which acknowledge the Saginaw program and the obligation of Bay County judges to sentence in accordance with it, to prevent Bay County from becoming a dumping ground for heroin dealers.

Although we recognize that trial judges do have an obligation to individualize punishment, see *People v Lorentzen,* 387 Mich 167; 194 NW2d 827 (1972), we would have to take a very lopsided view of the present record to void defendant's sentence on that basis. The record affirmatively shows that the sentencing judge considered that defendant did not have to be imprisoned for rehabilitation purposes, that defendant had a good job, good criminal

record, no history of drug use, was married, and had children. "Rehabilitation [, however,] is not the only criterion to be used in determining the punishment to be meted out to a particular offender." *People v Van Epps,* 59 Mich App 277, 286; 229 NW2d 414, 419 (1975). In *People v Snow,* 386 Mich 586; 194 NW2d 314 (1972), the Michigan Supreme Court approved the use of four factors in determining an appropriate sentence: "(a) the reformation of the offender, (b) protection of society, (c) the disciplining of the wrongdoer, and (d) the deterrence of others from committing like offenses." *Id.* at 592; 194 NW2d at 317. The sentencing judge in this case stated that a 5 to 20 year prison term was necessary to assure the community that the criminal justice system was concerned with and was the answer to their serious crime problems, including the trafficking of heroin. He also felt that the sentence was necessary to satisfy the community's interest in vesting vengence and retribution on those who violate the law and in warning others active in criminal participation of the seriousness and consequences of their involvement. These considerations were clearly permissible under *Snow.* The judge also spoke of a need to avoid sentencing disparity within the circuit and between the immediate community and other areas of the state, especially the immediately adjacent communities. His apparent thought was either that sentencing disparity based on locality would be unjust or that sentencing disparity based on locality would encourage an influx of criminals into the light sentencing community. These goals would also seem to be appropriate to the sentencing decision under *Snow.* See also, *People v Yennior,* 72 Mich App 35; 248 NW2d 680 (1976), *rev'd on other grounds,* 399 Mich 892 (1977), *People v Rodriguez,* 61 Mich App 42; 232

NW2d 293 (1975); *People v Shively,* 45 Mich App 658; 206 NW2d 808 (1973). Upon reviewing all of the criteria approved by *Snow,* the sentencing judge found "in this case" that the community factors "overweigh[ed] the impact on the Defendant". On the record, therefore, we find no abuse of the judge's sentencing discretion.

Defendant urges us to look outside the record to find a sentencing "program" in Bay County which undermines the facial balancing that took place in this case, which shows, in other words, that "individualization of sentencing [in Bay County] is a rule honored more in the breach than the observance". *People v Yennior, supra,* at 49, 248 NW2d at 686 (D.C. RILEY, J. dissenting). We are precluded by Michigan Supreme Court precedent from making such an investigation. In *People v Snow, supra,* the Court held that it was error for the Court of Appeals to roam afield from review of the case before it and to review in general the sentencing policy of an entire circuit court. 386 Mich at 594; 194 NW2d at 318.

Affirmed.